STATE *ex rel.* EVERETTE SHREWSBURY, *et al.*

*v.*

JOHN O. POTEET, *Justice of the Peace, etc.*

(No. 13376)

Submitted September 11, 1973. Decided February 19, 1974.

*Daniel F. Hedges* for relators.

*John L. Detch* for respondent.

CAPLAN, CHIEF JUSTICE:

In this original proceeding in prohibition the petitioners, Everett Shrewsbury and Mary E. Shrewsbury, residents and taxpayers of Rupert, Greenbrier County, West Virginia, seek a writ to restrain and prohibit John O. Poteet, Justice of the Peace of Fort Spring District, Greenbrier County, from further proceeding to collect an amount contained in a judgment rendered by him against said petitioners.

The main thrust of the petitioners' allegations is set out in their petition as follows:

> "* * * proceedings before respondent, Justice of the Peace John O. Poteet, who is compensated pursuant to the West Virginia fee system, deprived the petitioners herein of the due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article III, Section 10 of the West Virginia Constitution, in that, the statutory scheme, permitting creditor-plaintiffs a county-wide choice as to their judge (pursuant to Chapter 50, Article 2, Section 4 of the West Virginia Code), together with the case-volume payment scheme (pursuant to Chapter 50, Article 17, Section 2 [1] of the West Virginia Code), creates competition between justices to get creditor-plaintiffs, which destroys the judicial impartiality

> implicit in constitutionally guaranteed due process, creating a pecuniary interest in the justice, and which results in the consistent awarding of judgments for creditor-plaintiffs regardless of the law and a fairness to debtor-defendants. The petitioners further allege that such system subjects the petitioners to justice for sale and a denial of justice in violation of Article III, Section 17 of the West Virginia Constitution."

Plainly stated, the petitioners assert that the respondent Justice of the Peace who entered a judgment against them practiced "justice for sale" in violation of Article III, Section 17 of the West Virginia Constitution by inducing the public to use his services and that by reason thereof had a pecuniary interest in the outcome of the cases before him by reason of all of which they did not receive a fair and impartial trial.

The respondent filed an Answer and Return to the rule issued against him. Therein he denied any improper actions and contended that he was operating under state statutes relative to his office of Justice of the Peace. He asserted that he charged only such fees and costs as were authorized by such statutes and that he acted in his judicial capacity to the best of his ability. He filed no brief in this Court, relating in his Answer that he was "not of the disposition to defend at his cost the minor judiciary known as the Justice of the Peace system in West Virginia and leaves this matter to the judgment of the West Virginia Supreme Court of Appeals."

The record reveals that the Shrewsburys, petitioners herein, as a result of dental services having been rendered on March 17, 1971 by Dr. John Echols received a bill for such services. This bill remained unpaid and in March, 1973 suit for the recovery thereof was instituted in the court of the respondent. The summons served upon the petitioners reflected a debt in the sum of $141.00, exclusive of interest and costs, and called for an appearance of the petitioners before the respondent on April 3, 1973 at 11 P.M. No appearance was made by the petitioners due to the alleged "impossibility at such an unreasonable hour."

Subsequently, judgment was entered against the Shrewsburys in the amount of $169.51, which was itemized as follows:

| | |
|---|---|
| Judgment | $141.00 |
| Interest | 8.46 |
| Justice | 5.00 |
| Constable | 3.50 |
| Commissions | 7.05 |
| Execution | 4.50 |
| | $169.51 |

After it was indicated on the return of the execution on the judgment that no property was found, a suggestee execution was issued by the respondent and forwarded to the Clerk of the Circuit Court of Greenbrier County for service upon Sewell Coal Company, the then employer of Mr. Shrewsbury.

On or about February 18, 1972, The Reliable Collection Agency, Inc. instituted a separate action against the Shrewsburys in the court of respondent Poteet. Judgment was entered against the petitioners on April 4, 1972 in the amount of $399.48, $99.48 thereof alleged to be interest. Pursuant to the aforesaid contentions, the Shrewsburys here seek to prohibit the enforcement of these judgments.

In support of their petition for prohibition the petitioners filed many depositions including that of John O. Poteet, the respondent. They also filed a host of exhibits that were presented and filed at the taking of the depositions. These depositions and exhibits show conclusively that the respondent, Justice of the Peace John O. Poteet, consistently has displayed favor to creditors in Greenbrier County. They show that many creditors in that county seek and use the services of Mr. Poteet for the reason that he does consistently render favorable judgments. Petitioners' exhibits Nos. 32 and 33 reveal that of thirty-eight major creditors in the Greenbrier County area, most exclusively sought redress in the respondent's court to the near exclusion of other Justices of the Peace in that area. It is revealed that The Reliable Collection

Agency and other major creditors used the respondent's court to the complete exclusion of other justices. These allegations are not refuted or in any manner denied.

The deposition of Dr. Echols showed that he used the respondent's court because he could "get the money collected". It was asserted in a deposition of an employee of the Bank of Ronceverte that it had an arrangement with the respondent whereby he would receive a monetary stipend on an annual basis for collection work; that suit for the collection of money was instituted on its behalf by the respondent; and that there was no necessity for anyone to appear on behalf of the bank at any hearing held by the respondent. Other creditors also testified that they were not required to appear at hearings held for the collection of delinquent accounts. Others deposed that they used respondent Poteet because he did a "good job" of collecting accounts; that if the respondent began rendering judgments for the defendant-debtors rather than for creditor-plaintiffs they would seek another Justice of the Peace for the fulfillment of their needs; that Mr. Poteet, as a practice, notified debtors on behalf of various creditors that suit would be instituted if they did not pay the alleged debt within a stated time; and that Mr. Poteet made a charge for sending these letters to debtors. Significant to this consideration, it is revealed by the depositions and exhibits, and it is unrefuted, that between the years 1969 and 1973, 874 cases were instituted by the principal creditors of the area in the court of Justice of the Peace Poteet while a total of 49 cases were instituted in the courts of the other five Justices of the Peace in Greenbrier County during that period. Most significantly, of the above 874 cases the following tabulation appears:

Judgments for the plaintiff ............ 874

Judgments for the defendant ............ 0

In addition to the foregoing, many depositions and exhibits in support thereof further firmly establish that respondent Poteet is engaged in the collection business

rather than in the administration of justice. It is uncontradicted in the record of this case that creditor-plaintiffs can obtain judgments in the respondent's court by the mere process of referring a claim to him for collection. Such creditor need not appear in order to obtain a judgment. Furthermore, it has been conclusively demonstrated that so long as the respondent favors creditors, he will continue to receive more "business". Also, it is noteworthy that there are at least five other Justices of the Peace in Greenbrier County.

It is the contention of the petitioners that by reason of these admitted circumstances they, as debtor-defendants, did not and could not receive a fair and impartial trial in the respondent's court. They assert that the fee system provided in Code, 1931, 50-17-1, as amended, for the payment of Justices of the Peace, and the circumstances reflected in this record unmistakably show that the respondent has a pecuniary interest in the case before him, thereby rendering impossible a trial by a fair and impartial tribunal. This, they insist, constitutes a violation of due process as guaranteed by the federal and state constitutions.

It has been long and forcefully held that the guarantee of due process under the federal and state constitutions requires that a defendant in a judicial proceeding be afforded a trial before a fair and impartial tribunal. *Ward v. Monroeville,* 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972); *Tumey v. Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927); *Williams v. Brannen,* 116 W.Va. 1, 178 S.E. 67 (1935); *City of Grafton v. Holt,* 58 W.Va. 182, 52 S.E. 21 (1905); *Findley v. Smith,* 42 W.Va. 299, 26 S.E. 370 (1896). In clear and cogent language the foregoing authorities have given unqualified support to the ancient legal maxim, *Nemo Debet Esse Judex In Propria Causa*— No man ought to be a judge in his own cause—which has been called a "fundamental rule of reason and of natural justice." Burrows, Sett. Cas., 194, 197.

It is essential to the fair and proper administration of

justice that courts, whether the highest in the land or the most minor, be completely independent, absolutely free from influence and wholly without any pecuniary interest, however remote, in any matter before them. This concept has been so firmly established by the above cited authorities and by recent decisions of this Court that further comment thereon is deemed unnecessary. *Keith v. Gerber,* 156 W.Va. 787, 197 S.E.2d 310 (1973); *State ex rel. Reece v. Gies,* 156 W.Va. 729, 198 S.E.2d 211 (1973); *State ex rel. Osborne v. Chinn,* 146 W.Va. 610, 121 S.E.2d 610 (1961).

Let us now turn to the instant case and determine whether respondent Poteet, acting in his capacity as a duly elected Justice of the Peace, had a pecuniary interest in the cases before him. In making this determination we must look also to the statute which provides compensation to this judicial officer. Code, 1931, 50-17-1, as amended, provides that a Justice of the Peace, in civil cases, "shall charge and collect" a fee of $5.00 "[f]or entering and trying any civil suit * * * whether the suit be contested or uncontested and whether or not the suit be completed or discontinued * * *." Clearly, under the fee system provided in the above statute, the income of a Justice of the Peace is determined by the number of cases instituted in his court. It necessarily follows that the more cases he handles the more $5.00 fees he will receive.

Although the evidence in this record conclusively demonstrates that the respondent gives creditor-plaintiffs preferential treatment in his court, so far as his fees are concerned he is in compliance with the terms of the statute. The fact that Mr. Poteet is acting within the provisions of the statute (Code, 1931, 50-17-1, as amended) shows unequivocally that such statute is designed to give the Justice of the Peace a pecuniary interest in any case instituted in his court.

To make such statute constitutionally invalid it is not necessary to show actual abuse by the Justice of the Peace. In *Tumey v. Ohio, supra,* Chief Justice Taft said:

"Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law." Although this case is civil rather than criminal, the principle expressed in *Tumey* applies. Code, 1931, 50-17-1, as amended, wherein it provides that a Justice of the Peace shall charge and collect a five dollar fee, not only permits but in fact encourages one to favor those who will bring him "business". The incentive to increase the number of five dollar fees is built into the statute.

Inasmuch as it has been readily demonstrated that respondent Poteet has been shown to have a pecuniary interest in the cases involved in the instant proceeding, thereby effectively destroying the constitutionally mandated impartiality required of a tribunal, he is rendered unqualified to try such cases. Furthermore, since in collecting such fees he is not in violation of the statute, it becomes obvious that such statute necessarily creates and promotes the constitutionally forbidden pecuniary interest.

In view of the foregoing, we are of the firm opinion that Code, 1931, 50-17-1, as amended, providing the $5.00 fee to Justices of the Peace, creates a pecuniary interest in such judicial officers and is therefore in violation of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment to the Constitution of the United States; also, inasmuch as such statute encourages justice for sale it violates Article III, Section 17 of our constitution.

For the reasons stated in this opinion, the writ prayed for is granted and the respondent, John O. Poteet, is prohibited from further proceeding to enforce or collect upon the void judgments.

*Writ awarded.*