Merrill Blankenship

*v.*

Minton Chevrolet, Inc., *et al.*

(No. 14559)

Thomas L. Anderson, *and*

James A. Liotta, *Adm'r., etc*

*v.*

M. C. Moran

(No. 14435)

Donald Shaffer, *etc.*

*v.*

J. O. Marko, *etc., et al. and*

Richard S. Stephenson

(No. 14394)

Decided November 6, 1979.

*Charles R. Garten, Jr., Daniel F. Hedges*, for Blankenship.

*Eric H. O'Briant, Valentine, Wilson & Partain*, for Minton Chevrolet, et al.

*J. Scott Tharp, James A. Liotta*, for Anderson, et al.

*Rose, Southern & Padden, Herschel Rose, Duane Southern, Philip C. Petty*, for Moran.

*Richard S. Stephenson*, pro se.

No appearance by Shaffer.

NEELY, JUSTICE:

These three cases present substantially the same question and for the purpose of decision have been consolidated. The common issue is whether the decision of this Court in *Shrewsbury v. Poteet*, ___ W.Va. ___, 202 S.E.2d 628 (1974) which found the method of paying justices of the peace unconstitutional because judicial officers had pecuniary interest in the outcome of cases before them makes all judgments rendered in justices' courts before *Shrewsbury, supra*, unenforceable. The Circuit Courts of Marion and Logan Counties declined to apply *Shrewsbury* retroactively. The Circuit Court of Monongalia County, on the other hand, declared that *Shrewsbury* rendered the decisions of justices of the peace void *ab initio*. We affirm the decision of the Circuit Courts of Marion and Logan Counties upholding the enforceability of judgments from the old justices' courts and we reverse the decision of the Circuit Court of Monongalia County.

The dates of decision by the three justices of the peace in question span a period of over seventeen years and involve amounts under $250. The contested judgment in Marion County, for example, was entered on 31 May 1955 and involves $231.14 plus interest and costs. None of the parties suggests an actual abuse of power by the justices who rendered the judgments involved in these proceedings; although there are additional issues, we granted these appeals solely to determine the retroactiv-

ity of *Shrewsbury* and find that question the only issue fairly raised.

I

A study of our application of the void/voidable distinction illuminates no consistent or logical analysis.[1] So, too, the United States Supreme Court provided little more illumination in determining the legal consequences of judicial invalidation of a statute, although they have admitted the inadequacy of the void/voidable inquiry. Under the classic theory of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), a court confronted with an unconstitutional statute simply refused to apply it in the case before it. That narrow approach was then scrapped to permit statutes ruled unconstitutional to be considered nullities, *Norton v. Shelby County*, 118 U.S. 425 (1886). Realizing the problem to be more subtle and complex than *Norton* had suggested, the Supreme Court retreated from *Norton's* simplistic conclusion and held that each case must be viewed on its own merits, since "it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." *Chicot County Draining District v. Baxter State Bank*, 308 U.S. 371 (1940).[2]

On the very subject which confronts us now, this Court has ruled that a judgment on the merits where the judge had a pecuniary interest in the outcome of the case, was merely voidable and not void. *City of Grafton*

---

[1] *Shephard v. City of Wheeling*, 30 W.Va. 479, 4 S.E. 635 (1887) (Court concluded that it was not within power of the judiciary to declare a statute to be void); *Payne v. Staunton*, 55 W.Va. 202, 46 S.E. 927 (1904) (Court recognized principle of *ab initio* voidness); *Morton v. Cabot*, 134 W.Va. 55, 63 S.E.2d 861 (1949) (Court found statute allowing tax benefits to oil and gas lessees to be unconstitutional and therefore void.)

[2] Chief Justice Burger, by dictum in *Lemon v. Kurtzman*, 411 U.S. 192 (1973), to a considerable degree overruled the strict *Norton* approach when he said: "[h]owever appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." *Id.* at 199.

*v. Holt*, 58 W.Va. 182, 52 S.E. 21 (1905). Unfortunately, however, we are no more consistent than the United States Supreme Court since we declared that in criminal cases a statute granting a pecuniary interest to the judge rendered any criminal judgment absolutely void. That holding in *State ex rel. Moats v. Janco*, 154 W.Va. 887, 180 S.E.2d 74 (1971) where we concluded that a conviction in a drunk driving case was void because under the statute the justice received a $2 fee for an appeal bond in the event of conviction and a $.50 fee for certifying the conviction then appeared to be applied in a civil case involving an eviction. *State ex rel. Reece v. Gies*, 156 W.Va. 729, 198 S.E.2d 211 (1973). Our casual use of the terms "void" and "voidable" in these cases, however, was not tempered by the necessity to confront the retroactivity questions directly, where the nature of the inquiry would have required a careful selection of vocabulary.

There is no theoretical underpinning behind the void-/voidable language due to the differing factual situations, the contradictory rulings, and the change in judicial policies and philosophies over the years. Interestingly, our decision in *Shrewsbury v. Poteet*, ____ W.Va. ____, 202 S.E.2d 628 (1974) demonstrates that the approach we have followed in this area has been that typically followed when a decision is voidable, not void. In *Shrewsbury* we could have held the judgments void *ab initio* and granted the writ of prohibition on the authority of *State ex rel. Reece v. Gies, supra* alone; instead, however, we weighed the evidence on the abuse of legitimate power by the particular justice and we implied that this factual information was important. In *Shrewsbury*, the Court found that in the 874 judgments rendered by the justice of the peace in question creditors had prevailed 874 times and the debtors none while only 49 cases had been instituted in the courts of the other five justices in the same county by creditors during the same period. This, we felt, was persuasive evidence of abuse of power. Our Court held the *Shrewsbury* judgment to be "void," but was silent as to all other judgments rendered by

justices of the peace. While we did rely upon the principle that proof of abuse of power is not necessary as expressed in the landmark decision *Tumey v. Ohio*, 273 U.S. 510 (1927), we also recognized that *Tumey* was a criminal case.[3] As we shall see from the discussion below, different treatment for criminal cases as opposed to civil cases is justified because of the nature of the reliance interest on the part of those adversely affected by retroactive application.

## II

In determining whether *Shrewsbury* shall have retroactive application, we shall follow the teaching of *Chicot*, *supra* that:

> The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration .... Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination.

308 U.S. at 374.

Since an absolute rule cannot be formulated to determine if an unconstitutional statute should make a judicial decision void or voidable, the more reliable approach is to consider the ramification of retroactivity with regard to this issue as a whole. In this undertaking we are instructed by the guidelines formulated for the consideration of the retroactivity of an overruling decision; set

---

[3] In criminal cases the general rule has been that a statute found to be unconstitutional because it gives a court a pecuniary interest in the outcome of a criminal proceeding renders all judgments under the statute null and void *ab initio*. *Ward v. Monroeville*, 409 U.S. 57 (1972); *Tumey v. Ohio*, 273 U.S. 510 (1927). We have found no other jurisdictions finding judgments in civil matters to be null and void *ab initio* because the court had a pecuniary interest in the outcome. *See*, Annot., 72 A.L.R.3d 375 (1976).

forth in *Bradley v. Appalachian Power Co.,* ___ W.Va. ___, 256 S.E.2d 879 (1979). The essential teaching of *Bradley* and *Pnakovich v. SWCC,* ___ W.Va. ___, 259 S.E.3d 127 (1979) concerning the retroactivity of Workmen's Compensation statutes which relied upon *Bradley* is that in retroactivity questions equity to those seeking retroactive application must be balanced against reliance by those who would avoid retroactivity. *See also, Ables v. Mooney,* ___ W.Va. ___, 264 S.E.2d 424 (1979). Consequently we shall analyze equity versus reliance in the case before us.

The statutory design for the justice of peace courts had been unchallenged for many years until *Moats,* and *Reece, supra*; consequently, innocent litigants were led to rely on its continued effective operation. A retroactive application of *Shrewsbury* would upset the thousands of judgments rendered in justice of the peace courts, a significant number of which probably were unpaid and are existing liens. If, in these cases, there had been an actual abuse of power they can still be challenged in the same way that the judgment in the *Shrewsbury* case was challenged, but the mere *theoretical* potential for abuse must be balanced against society's need for stability and the reliance interest of just and innocent holders of existing judgments which were in fact rendered in an unexceptionable proceeding.

The volume of consistent precedent behind only prospective application of a statutory invalidation in circumstances of this type indicates that other courts have felt that the reliance interest outweighs the equity interest. Furthermore, this precedent in and of itself leads to further reliance as it causes reasonable men searching the law to expect that former judgments will continue to be valid and to rely on that conclusion. *Chicot County Drainage District, supra* stands for the legitimacy of the reliance consideration and this reliance consideration appears to underlie recent federal circuit court cases which have determined that replevin statutes are not retroactively void despite the Supreme Court's holding in *Fuentes v. Shevin,* 407 U.S. 67 (1972) that they are

unconstitutional, *Kacher v. Pittsburgh National Bank*, 545 F.2d 842 (3rd Cir. 1976); *Douglas-Guardian Warehouse Corporation v. Posey*, 486 F.2d 739 (10 Cir. 1973).[4] When we consider overall equity to the judgment debtors in the cases before us, it is probably even significant that under the procedure in effect before the enactment of the Judicial Reorganization Amendment of 1974, any party could remove proceedings before any particular justice of the peace as an automatic matter of right if he "alleged a personal bias or prejudice either against him or in favor of any opposite party to the proceedings." *W.Va. Code*, 50-4-33 [1931] (repealed 1976). Thus we conclude that in the balance of equity versus reliance the stronger case is made by those defending reliance.

Having discussed the functional criteria we have used to determine whether old justice court judgments are void or voidable we affirm the decisions of the Circuit Courts of Marion and Logan Counties upholding their enforceability and finding them voidable rather than void, and we reverse the decision of the Circuit Court of Monongalia County finding them void *ab initio*.

*No. 14459 Affirmed.*
*No. 14435 Affirmed.*
*No. 14394 Reversed.*

---

[4] Paralleling these developments in the federal courts, many of our sister states have retreated from the *Norton* doctrine. *See Davis Management, Inc. v. Sanitary District No. 276*, 204 Neb. 316, 282 N.W.2d 576 (1979); *Perkins v. Eskridge*, 278 Md. 619, 366 A.2d 21 (1976); *Bookasta v. Hartford Accident & Indem. Co.*, 46 Cal. App. 3d 237, 120 Cal. Rptr. 229 (Dist. Ct. App. 1975); *Reich v. Board of Fire & Police Comm'rs*, 13 Ill. App. 3d 1031, 301 N.E.2d 501 (1973); *Roberson v. Penland*, 260 N.C. 502, 133 S.E.2d 206 (1963).