350 S.E.2d 706

**Robert Nielsen HUBBY, Jr.**

v.

**James CARPENTER, Mayor and Municipal Judge for City of Buckhannon, etc.**

**No. 17165.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1986.

Decided Nov. 14, 1986.

Daniel J. Post, Buckhannon, for petitioner.

David W. McCauley, Coleman & Wallace, Buckhannon, for respondent.

**MILLER, Chief Justice:**

This original proceeding in prohibition challenges the validity of W.Va. Code, 8–10–1,[1] which vests mayors with the authority to hear and determine violations of municipal ordinances, on the basis that it contravenes the separation of powers clause, Article V, Section 1[2] of the West Virginia Constitution.

---

1. As pertinent here, W.Va. Code, 8–10–1, provides:

   "When not otherwise provided by charter provision or general law, the mayor of every municipality shall be the chief executive officer of such municipality, shall have the powers and authority granted in this section, and shall see that the ordinances ... are faithfully executed. He shall have jurisdiction to hear and determine any and all alleged violations thereof and to convict and sentence persons therefor.

   \*    \*    \*    \*    \*    \*

   "He shall have power to issue executions for all fines, penalties and costs imposed by him...."

2. Article V, Section 1 of the West Virginia Constitution provides:

   "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

In April, 1986, the relator, Robert Nielsen Hubby, Jr., was arrested on a charge of contributing to the delinquency of a minor and was taken before James Carpenter, the mayor of the City of Buckhannon, who had previously issued the arrest warrant, and a hearing date was set. According to the respondent mayor, contributing to the delinquency of a minor is prohibited by Article 3 of Ordinance No. 100 of the City of Buckhannon. The relator then petitioned this Court for a writ of prohibition seeking to prevent the mayor from conducting the misdemeanor proceeding.

Section 8 of the Charter of the City of Buckhannon entitled "Legislative Department: Duties" vests the legislative power of the city in the city council composed of the mayor, the city recorder, and five councilmen. Section 10 of the Charter provides that the mayor shall preside over city council meetings, and Section 18 provides that the judicial power of the city shall be vested in a police court of which the mayor shall be the judge.[3]

In the past, most challenges to municipal court procedures have been based on due process grounds or a constitutional provision specifically applicable to criminal proceedings. In *Champ v. McGhee*, 165 W.Va. 567, 270 S.E.2d 445 (1980), this Court invalidated a Bluefield municipal ordinance which prohibited jury trials in municipal courts and held in its single Syllabus:

> "Under art. 3, § 14 of the West Virginia *Constitution*, the right to a jury trial is accorded in both felonies and misdemeanors when the penalty imposed involves any period of incarceration."[4]

The Court also recognized in *Champ* that defendants in municipal court are entitled to a twelve-person jury, although in magistrate court they would only be entitled to a six-person jury under Article VIII, Section 10 of the West Virginia Constitution.[5]

Four years later in a case arising out of the same municipal court, we held in *Scott v. McGhee*, 174 W.Va. 296, 324 S.E.2d 710 (1984), that the due process clause of our Constitution prohibits a municipal court judge in certain circumstances from dismissing municipal charges solely because the defendant exercised his right to a jury trial. In granting a writ of prohibition to prevent dismissal of the municipal charges, we held in Syllabus Point 2:

> "The due process clause of Article III, § 10 of the Constitution of West Virginia prohibits a municipal court judge from dismissing municipal charges solely because the accused has exercised his constitutional right to a jury trial, when the penalty under state law for the same offense carries a heavier jail sentence than provided for by municipal ordinance."

The right to counsel, as guaranteed by both the United States Constitution[6] and the West Virginia Constitution, was extended in *Bullett v. Staggs*, 162 W.Va. 199, 250 S.E.2d 38 (1978), to criminal trials in municipal courts as reflected by Syllabus Point 1: "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." We also ruled in *Bullett* that circuit courts under

---

**3.** It appears the City of Buckhannon has adopted the mayor-council form of municipal government as authorized by W.Va. Code, 8–3–2. As pertinent here, the statutory provision states:

"Plan I—'*Mayor-Council Plan.*' Under this plan: (1) There shall be a city council, elected at large or by wards, or both at large and by wards, by the qualified voters of the city; a mayor elected by the qualified voters of the city; and such other elective officers as the charter may prescribe; and (2) The mayor and council shall be the governing body and administrative authority."

**4.** Article III, Section 14 of the West Virginia Constitution provides, as relevant here: "Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men...."

**5.** Article VIII, Section 10 of the West Virginia Constitution provides, as pertinent here: "In a trial by jury in a magistrate court, the jury shall consist of six persons who are qualified as prescribed by law."

**6.** *See Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (Sixth Amendment to the United States Constitution).

W.Va. Code, 51–11–5, have the authority to appoint counsel for an indigent charged with a municipal ordinance violation.

The legislature has afforded persons convicted of municipal ordinance violations with an appeal de novo to the circuit court. W.Va. Code, 8–34–1.[7] In *State v. Eden*, 163 W.Va. 370, 256 S.E.2d 868 (1979), we held that our due process clause prohibits the imposition of a heavier penalty upon a defendant who exercises his right of appeal from magistrate court. In *State v. Bonham*, 173 W.Va. 416, 317 S.E.2d 501 (1984), we reaffirmed and extended this principle to appeals from municipal courts, stating in Syllabus Point 2:

> "A defendant who is convicted of an offense in a trial before a magistrate or in municipal court and exercises his statutory right to obtain a trial de novo in the circuit court is denied due process when, upon conviction at his second trial, the sentencing judge imposes a heavier penalty than the original sentence. W.Va. Const. art. III, § 10."

In *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), a municipal court judge was held to be subject to the due process guarantee that a judicial tribunal be neutral and detached. There, the United States Supreme Court found that a defendant was denied due process because he had been compelled to stand trial in a mayor's court, which provided a substantial portion of the village revenues. It was also shown that the mayor had substantial executive powers with regard to administering the affairs of the municipality.[8]

The Supreme Court's decision in *Ward* was a logical outgrowth of its earlier decision in *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). In *Tumey*, the defendant was convicted of violating the prohibition law before the mayor of a small town in Ohio, whose regular salary was supplemented by the fees and costs he levied against persons he found to have violated municipal ordinances. The Supreme Court held the convictions violated due process, because the judge had "a direct, personal, substantial pecuniary interest in reaching a conclusion against him [the defendant] in his case." 273 U.S. at 523, 47 S.Ct. at 441, 71 L.Ed. at 754.

We have adopted the principles of *Ward* and *Tumey* and have sustained due process challenges to our former justice of the peace system based upon the concept that the pecuniary interest of the justice of the peace disqualified him from trying the case.[9] In *Keith v. Gerber*, 156 W.Va. 787, 197 S.E.2d 310 (1973), we granted a writ of prohibition preventing the mayor of the City of St. Marys from trying the accused on a traffic offense. There the mayor, in addition to a $300 yearly salary, received

---

**7.** W.Va.Code, 8–34–1, as material here, reads:

> "Every person sentenced under this chapter by any mayor or police court judge or municipal court judge to imprisonment or to the payment of a fine of ten dollars or more (and in no case shall a fine of less than ten dollars be given if the defendant, his agent or attorney object thereto) shall be allowed an appeal de novo to the circuit court...."

We noted in *Scott v. McGhee*, 174 W.Va. at 297 n. 2, 324 S.E.2d at 710 n. 2, that "[s]tate law limits the maximum jail term for municipal ordinance violations to thirty days in jail. W.Va. Code, 8–11–1, and W.Va. Code, 8–12–5(57)."

**8.** In *Ward*, the Supreme Court also found it constitutionally irrelevant that the defendant was entitled to a trial de novo upon appeal from municipal court, reasoning that the defendant was entitled to a neutral and detached judge in the first instance.

**9.** *See State ex rel. Moats v. Janco*, 154 W.Va. 887, 180 S.E.2d 74 (1971); *State ex rel. Osborne v. Chinn*, 146 W.Va. 610, 121 S.E.2d 610 (1961); *Williams v. Brannen*, 116 W.Va. 1, 178 S.E. 67 (1935). The Court held in Syllabus Point 2 of *Janco*: "A justice of the peace is disqualified from acting in a criminal case in which he has a pecuniary interest, however remote, and a judgment of conviction rendered by him in such case is void because it is violative of the due process clauses of the Federal and State Constitutions." The Court has arrived at the same conclusion in civil cases. *See State ex rel. Shrewsbury v. Poteet*, 157 W.Va. 540, 202 S.E.2d 628 (1974); *State ex rel. Reece v. Gies*, 156 W.Va. 729, 198 S.E.2d 211 (1973). The Court stated in Syllabus Point 2 of *Shrewsbury*: "'Where a justice of the peace has any pecuniary interest in any case to be tried by him, however remote, he is disqualified from trying such case.' Point 1, Syllabus, *State ex rel. Osborne v. Chinn*, 146 W.Va. 610 [121 S.E.2d 610 (1961)]."

five dollars in compensation for each conviction obtained in his court. We stated in Syllabus Point 1: "Where a judge has a pecuniary interest in any case to be tried by him he is disqualified from trying the case, and prohibition is the proper remedy to restrain such trial." [10]

■ In his response to the rule to show cause in this case, the respondent mayor asserts that he is not disqualified under *Ward*, because the City of Buckhannon realizes only a tiny fraction of its revenues from fines levied in the mayor's court. He included a chart showing the city's revenues during the past two fiscal years which indicated that the fines imposed in the mayor's court constituted less than one percent of the City's total revenues. In *Ward*, the mayor's court over a five-year period generated some forty percent of village revenues. It would appear that the *Ward* Court intimated that at some minimal level of collective fines due process would not be violated because their influence on the municipal court's decision-making process would be insubstantial. We agree with the respondent mayor that given the minor amount of municipal revenues derived from

the mayor's court, a due process violation has not been shown.[11]

■ With these procedural safeguards as a backdrop, we address the relator's separation of powers argument. We begin by observing that Article VIII, Section 11 of the West Virginia Constitution authorizes the legislature to establish municipal, police, or mayor's courts and to specify the method by which such judges shall be selected. This section also prohibits the judges from receiving compensation on a fee basis.[12] As indicated earlier, the legislature by virtue of W.Va. Code, 8–10–1, has vested mayors of municipalities with the judicial power to hear municipal law violations.[13]

■ We have found only one case that addresses the precise separation of powers question presented here. In *Poynter v. Walling*, 54 Del. 409, 177 A.2d 641 (1962), the claim was made that a municipal court judge who was the mayor could not sit because of the separation of powers bar. The court held that the constitutional requirement that the three departments of government be separate "applies to state government and not to the government of

10. We have recognized on the appellate level the "rule of necessity," which was discussed at some length in *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). This rule acknowledges that an appellate court that is the court of last resort is the only forum that can hear a case on appeal. If the issue that must be decided affects all of the sitting judges and there is no alternate unbiased group, then the sitting appellate judges must of necessity decide the issue. *E.g., Oakley v. Gainer*, 175 W.Va. 115, 331 S.E.2d 846 (1985); *Wagoner v. Gainer*, 167 W.Va. 139, 279 S.E.2d 636 (1981); *State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 207 S.E.2d 421 (1973).

11. Moreover, in *Ward*, the Supreme Court indicated that where the mayor exercises only very limited executive powers, this would not disqualify him from presiding in the mayor's court, citing *Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). However, the Supreme Court in *Ward* left it unclear in this situation whether the showing of substantial revenues from the mayor's court might change the result.

12. Article VIII, Section 11 of the West Virginia Constitution provides:
"The legislature may provide for the establishment in incorporated cities, towns or vil-

lages of municipal, police or mayors' courts, and may also provide the manner of selection of the judges of such courts. Such courts shall have jurisdiction to enforce municipal ordinances, with the right of appeal as prescribed by law. Until otherwise provided by law, all such courts heretofore established shall remain and continue as now constituted, and with the same right of appeal, insofar as their jurisdiction to enforce municipal ordinances is concerned; but on and after January one, one thousand nine hundred seventy-seven, any other jurisdiction now exercised by such courts shall cease. No judge of a municipal, police or mayor's court or any officer thereof shall be compensated for his services on a fee basis or receive to his own use for his services any pecuniary compensation, reward or benefit other than the salary prescribed therefor."

13. *See* note 1, *supra.* Under W.Va. Code, 8–10–2, the legislature has provided for an alternative scheme. This statute authorizes municipalities to create municipal courts and to provide for the appointment or election of a municipal judge who would exercise the same judicial power as the mayor. *See State ex rel. Hill v. Smith*, 172 W.Va. 413, 305 S.E.2d 771 (1983).

municipal corporations and their officers." 54 Del. at 415, 177 A.2d at 645. This holding is in accord with the general rule that the separation of powers doctrine applies to state government and state officers and ordinarily does not extend to the government of municipal corporations. *Sarlls v. State ex rel. Trimble,* 201 Ind. 88, 166 N.E. 270 (1929); *Eckerson v. City of Des Moines,* 137 Iowa 452, 115 N.W. 177 (1908); *Bryan v. Voss,* 143 Ky. 422, 136 S.W. 884 (1911); *State ex rel. Simpson v. City of Mankato,* 117 Minn. 458, 136 N.W. 264 (1912); *Smith v. Hazlet,* 63 N.J. 523, 309 A.2d 210 (1973); *LaGuardia v. Smith,* 288 N.Y. 1, 41 N.E.2d 153 (Ct.App.1942); 16 Am.Jur.2d *Constitutional Law* § 295 (1979); 16 C.J.S. *Constitutional Law* § 112 (1984); Annot., 67 A.L.R. 737 (1930).

We have not had occasion to directly decide whether the separation of powers principles are applicable to the municipal government level. In several cases, however, we have indicated that the separation of powers doctrine has diminished vitality "at the lower levels of government" because "there must necessarily be an overlapping of functions in responsible officials lest the cost of government become too burdensome to bear." *State ex rel. Sahley v. Thompson,* 151 W.Va. 336, 342, 151 S.E.2d 870, 873 (1966), *overruled on other grounds, State ex rel. Hill v. Smith,* 172 W.Va. 413, 305 S.E.2d 771 (1983).[14] In *Sahley,* we quoted approvingly from *Wheeling Bridge & Terminal Ry. Co. v. Paull,* 39 W.Va. 142, 145, 19 S.E. 551, 551–52 (1894):

"So that, while we find that the constitution, as much as possible keeps the heads of the three departments comparatively distinct and independent of each other, yet as we move down the scale these several powers become more complicated and interwoven with each other, *until we find the common council of every village exercising legislative, executive and judicial functions, indiscriminately, by authority of the same constitution which declares that these functions shall be kept distinct.* (Italics supplied.)"[15]

The thought expressed in *Wheeling Bridge* has deeper roots that rest on several principles. First, the concept of separation of powers is designed primarily as a check on the basic or organic form of government which is the State itself. *State v. Huber,* 129 W.Va. 198, 208–11, 40 S.E.2d 11, 18–20 (1946). Second, there is express constitutional recognition in Article VIII, Section 11 for the establishment of mayor's courts by the legislature. This indicates a constitutional status that suggests some recognition that the general constitutional doctrine of separation of powers is not fully applicable to a mayor's court. Third, we have long recognized under Article VI, Section 39, which empowers the legislature to create municipalities, that municipalities have no inherent powers, but are creatures of the legislature possessing only those powers that are expressly delegated or necessarly implied from some legislative enactment. *Toler v. City of Huntington,* 153 W.Va. 313, 168 S.E.2d 551 (1969); *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963); *Brackman's, Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71 (1943).

These factors may well account for the reduced need for the separation of powers

---

14. This Court in *Hill* struck down a municipal ordinance authorizing law enforcement and other local officials to issue arrest warrants. This was based in part upon decisions by the United States Supreme Court which require persons empowered to issue warrants to be neutral and detached and function independently of the police and prosecution. *See Shadwick v. City of Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972); *Coolridge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

15. Kenneth C. Davis, a leading authority on administrative law and former Associate Professor of Law at West Virginia University, in a rather lengthy article on the separation of powers entitled *Judicial Review of Administrative Action in West Virginia—A Study in Separation of Powers,* 44 W.Va.L.Q. 270 (1938), points to the unworkable nature of the principle at the municipal level. He observed that "[e]very municipal charter which confers upon a municipal council executive, legislative, and judicial powers [would violate] a literal interpretation of Article V." 44 W.Va.L.Q. at 374.

principle at the mayor's court level. This is particularly true in view of the various constitutional safeguards that surround the operation of a mayor's court which we have earlier touched upon.

In the present case, the relator does not point to any circumstances that would demonstrate the need to rigidly apply the separation of powers doctrine at the municipal level of government. We, therefore, conclude that in the absence of special circumstances, the doctrine of the separation of powers is not applicable to municipalities.

For the foregoing reasons, the writ of prohibition is denied.

Writ denied.