# CHARLESTON.

## CITY OF ST. MARYS *v.* LOCKE.

Submitted June 15, 1912. Decided October 21, 1913.

1. MUNICIPAL CORPORATIONS—*Special Assessments—Collection by Personal Action—Delegation of Power.*

    The Legislature has the constitutional right to confer upon cities, towns and villages the power to collect special assessments, for

street improvement, by personal action against the property owner, in any court of competent jurisdiction. (p. 35).

2. SAME.

It may also empower such municipalities to determine for itself, by ordinance, the manner of collecting its taxes and assessments. p. 35).

3. SAME—*Charter—Amendment by Statute.*

Chapter 47, Code, concerning the powers conferred upon municipalities and their officers, is an amendment to the special charters of all cities, towns and villages in the state, except the City of Wheeling, in so far as said chapter does not conflict with their special charter, regardless of when such charters were granted. (p. 33).

4. SAME—*Jurisdiction—Personal Action by City.*

In view of the powers delegated to it by Sections 34, 35 and 36, Chapter 47, Code, and an ordinance duly passed by it providing for the levying of special assessments for street improvement, and the collection thereof by suit ''before a competent court,'' a city may bring a personal action therefor against the property owner, before a justice of the peace, the amount thereof being within his jurisdiction. (p. 31).

5. APPEAL AND ERROR—*Presentation Below—Amount of Verdict.*

Error in the amount of a verdict, found upon a demurrer to evidence, can not be noticed in this court, if no motion to set it aside was made in the court below. (p. 34).

(MILLER, JUDGE. absent.)

Error to Circuit Court, Pleasants County.

Action by the City of St. Marys against H. P. Locke and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*William Beard,* for plaintiffs in error.

*G. D. Smith,* for defendant in error.

WILLIAMS, JUDGE:

H. P. Locke was awarded this writ of error to a judgment recovered against him by the City of St. Marys for the sum of $148.45, in an action, originally brought before a justice of the peace to recover a special assessment levied upon his property for the laying of a sidewalk on a street adjacent thereto, and appealed to the circuit court. Locke's counsel insists that the

justice was without jurisdiction. If the justice had not juris-
diction, it follows that the circuit court acquired none by appeal.
The justice's jurisdiction, if he has any, depends upon statute;
he does not derive it from the common law. But we think the
justice had jurisdiction of the action by virtue of statute and
the city's ordinance combined. The City of St. Marys was
granted a special charter in 1901. That charter does not
authorize it to make special assessments. It is similar to the
charter of the City of Elkins, which was held, in *Cain* v. *City
of Elkins,* 57 W. Va. 9, not to confer such power. But, claim-
ing the right to exercise the powers conferred on cities, towns
and villages by chapter 47, Code, that are not inconsistent with
the powers conferred by its special charter, the City of St.
Marys, in August, 1901, passed an ordinance styled "Paving
Ordinance," the second clause of which reads as follows:

"If any property owner or owners shall fail or refuse to pave
the sidewalks in front of their property in manner and form
as they are thereto required, for a period of 60 days after having
been served with notice by the Street Committee they are so
required to pave, it shall be lawful for the city to proceed to lay
a pavement upon the sidewalk in front of such property at
the cost and expense of the owner of said property and the cost
of laying such sidewalk and paving and curbing the same shall
be collected by the city from such owner or owners in like man-
ner as fines and taxes and shall constitute a lien upon the
property in front of which such pavement is laid, or the said
City of Saint Marys may at its election sue before a competent
court and obtain judgment for the price of said pavement and
collect the same under execution or decree."

The city relies upon the above section of its ordinance to sus-
tain the justice's jurisdiction. But counsel for Locke insist
that its act, attempting to provide its own remedy, was *ultra
vires.* This would be true, if it had not been authorized so to
do by statute, giving it the right to determine the manner in
which it may collect its fines and assessments. It may collect
its taxes and assessments in more than one way. Generally
speaking, when the statute creates a right and gives a remedy
for its enforcement, that remedy is exclusive. Hence, taxes

could not formerly be collected by action, as a debt, distraint being then the only remedy given the collector. But chapter 5, Acts 1904, (Sec. 33, Ch. 30, Code 1906), authorizes the officers whose duty it is to collect state, county and district taxes, to collect by appropriate action, in the name of the state, before a justice of the peace; or in a court of law or equity. Sec. 34, Ch. 47, provides that if the owner of land abutting upon a street "shall fail or refuse to curb, pave or keep the same clean, in the manner or within the time required by the council, it shall be the duty of the council to cause the same to be done at the expense of the city, town or village, and to assess the amount of such expense upon such owner or occupant, and the same may be collected by the sergeant in the manner herein provided for the collection of the city, town or village taxes." Section 35, same chapter, gives the sergeant the "same powers, rights and privileges" for the collection of city taxes, fines, levies and assessments, that are given to collectors of state taxes. And section 36, same chapter, in addition to making special assessments for street improvements a lien upon the property adjacent thereto, superior to all other liens, except taxes, provides for the enforcement thereof, not only by suit in equity, but also, "in such other manner as the council may by ordinance prescribe." It was in pursuance of the authority thus conferred on it that the City of St. Marys passed the ordinance above quoted. It was in compliance with the legislative power delegated to the municipality; and its action before the justice was thereby duly authorized.

It is suggested that chapter 47, Code, was not intended to apply to cities operating under special charters granted since the enactment of that chapter. But section 1, of said chapter, clearly confers upon all cities, towns and villages, except the City of Wheeling, the right to exercise the powers defined in that chapter, which are not inconsistent with their special charters, of course, whether their special charters were granted before, or since, the passage of that chapter. It is not confined to those towns thereafter incorporated by the circuit court, pursuant to that chapter. It is expressly made an *amendment* to the charters of all cities and towns, except the City of Wheeling. It

could not properly be called an amendment to a charter obtained under it, the chapter itself would then be the city's charter. The words "hereafter established," do not limit the manner of establishment. Moreover, section 39 of the special charter of St. Marys provides that the charter should not be construed to take away any of the power, conferred upon it or its officers by "general law," except so far as they were inconsistent with its special charter; thus indicating the legislative intent to clothe said city with additional powers contained in chapter 47.

A number of objections were made to the notice served on Mr. Locke, to lay the sidewalk. One is, that it was not given by the city council, but by the street committee. The ordinance especially provides for notice by the street committee. The council could delegate such authority to a committee of its own members. Another objection is, that it did not specify the width of the sidewalk to be laid. The curbing had already been set, and that indicated the width of the sidewalk. If Mr. Locke had been disposed to perform his duty in the premises, and entertained any doubt as to the width of the walk, he could easily have informed himself in relation thereto, by making application to the street committee.

The account is also objected to, for the reason that it shows the sidewalk was laid with cement blocks, whereas the notice to Locke required him to lay it with paving brick, sawed stone or first class cement. The walk was laid in a manner satisfactory to the city, and with material provided for in its ordinance. That was all the law required. Mr. Locke has no right to complain on that score. A portion of the sidewalk had already been laid near his property with cement blocks, and the city council, no doubt, desired to preserve uniformity in the appearance of the street, and, therefore, used cement blocks instead of solid cement.

Another objection to the account is, that it included an item for cost of setting the curbing, whereas the notice did not require defendant to set curbing. The curbing had been set by the city, before any notice was given to defendant, therefore the city had no right to charge defendant with it. As to that item, the city had not complied with the law, or even with its

own ordinance, which required notice to the owner and his failure for sixty days thereafter to do the work, as a prerequisite to the city's right to collect the cost of having it done from Locke. This being judicial error, would call for a reversal of the judgment, notwithstanding the amount of the erroneous item is less than one hundred dollars, *Bee* v. *Burdelte,* 23 W. Va. 744, and *Lamb* v. *Cecil,* 25 W. Va. 288, if objection had been made to the verdict, which was rendered on a demurrer to the evidence. But there was no motion to set aside the verdict, and the failure to make such motion was a waiver of the error.

Special assessments are sustainable upon the principle that private property is benefitted by the public improvement. That the legislature has the right to confer power upon municipalities to make such assessments is the well settled law of this state. *Heavner* v. *City of Elkins,* 69 W. Va. 255; *City of Parkersburg* v. *Tavenner,* 42 W. Va. 486; *Hager* v. *Milton,* 66 W. Va. 62; and it is admitted that the City of St. Marys was given such power by chapter 47, Code. But it is contended that the Legislature had no constitutional right to create a personal liability on property owners for such assessment, and provide for collection thereof by personal actions. It is claimed that the only remedy that can be lawfully given is by a proceeding *in rem,* against the property benefitted. We fail to see the force of this argument. Personal liability may flow from failure to perform a duty, whether that duty be created by law or by contract. On receiving the notice to lay the sidewalk, it became Mr. Locke's duty to comply therewith; and his failure to comply within sixty days thereafter, justified the city in performing the work at his expense. That the ordinance and the statute made it a personal obligation, as well as a lien on his property, we have already determined. We can not see why the Legislature may not create a personal liability for a special assessment, as well as for a general tax. It is as much the citizen's duty to pay the one as the other, when lawfully levied. Neither is a debt in the ordinary sense, but both are obligations to the government, in this instance to the municipality.

Judge Cooley, in his very excellent work on Taxation, Vol. 2, page 1276 (3d ed.), in discussing the subject of collecting spe-

cial assessments, says: "Collection may be provided for in any of the methods admissible in other cases, and what has been said on the subject of collection of general taxes is therefore applicable to the collection of special assessments whenever the proceedings are analogous."

*City of Muscatine* v. *The Chicago &c. R. R. Co.,* 79 Iowa 645, is a case very similar to the one in hand. There the city had levied a special assessment upon property owned by the railroad company, and brought its action at law to recover it, pursuant to one of its ordinances providing that such assessments might be collected in the same manner as taxes are collected. Ordinary taxes, in that state, being collectible by action, the court held, that: "While the property affected by the assessment became bound by a lien, the city could collect the taxes by personal action against the owners."

So also, in *Lima* v. *Cemetery Ass'n.,* 42 Ohio St. 128, it was held that, a law exempting lands of cemetery associations from taxation, did not exempt them from special assessments for street improvement, and that, while such land could not be sold to pay such special assessments, yet the municipality might enforce collection by such remedies as the statutes and courts of equity afforded.

The City of Chicago, in trust for use of *Schools* v. *City of Chicago,* 107 Ill. 27, is also a similar case. That case involved a special assessment levied upon school property, and the court of Illinois held that, while school property could not be sold, still the assessment might be enforced by other methods; and the school funds of the city were held to be liable therefor.

We do not mean to intimate that the owner could be made personally liable, regardless of benefits to his property. It might sometimes happen that the special assessment would greatly exceed the added benefit, or possibly exceed the value of the entire property. In such case, the enforcement of the assessment, as a personal liability, would amount to the taking of private property without just compensation, a thing which the constitution forbids. But no such question is raised as a defense to this action; and we must presume, for the purposes

of this case, that defendant's property was benefitted to the extent of the assessment sought to be collected.

The judgment is affirmed.

*Affirmed.*

ROBINSON, JUDGE *(concurring in the result)*:

Were it not for section 39 of the charter of the city of St. Marys, Acts 1901, ch. 147, the decision rendered would not meet my concurrence. That section reserved to the City of St. Marys the powers that its immediate predecessor, the town of St. Marys, had under the general provisions of Code 1899, ch. 47, not inconsistent with the powers conferred by the new charter. It would seem that the power specially to assess abutting property owners for the cost of sidewalks, theretofore existing in the town of St. Marys by virtue of chapter 47, is not inconsistent with the powers granted by the new charter, and was reserved to the city as chartered by Acts 1901, ch. 147.

But unless there is some such provision in the charter of a town or city specially passed by the Legislature subsequent to the original taking effect of chapter 47, which was on April 1st, 1869, the provisions of that chapter should not apply to the municipality so chartered by the Legislature. My construction of section 1 of chapter 47 has always been that it made the provisions of that chapter to apply only to municipalities established by circuit court incorporation pursuant to the chapter after its enactment, and to municipalities theretofore established howsoever, but that when a special charter was thereafter granted by the Legislature, the municipality taking it was independent of chapter 47, unless the legislative charter specifically made it to apply. In other words, chapter 47 is only an amendment to such charters as existed when that chapter originally became law. Charters granted by the Legislature thereafter contain all that the lawmaking body intended them to contain, and do not include the provisions of chapter 47 unless they so expressly provide. The involved language of section 1, chapter 47, as it appears in the present Code, is made clearer by a reference to its original form in the Code of 1868.

Properly interpreted, section 1 of chapter 47 means that the

provisions of that chapter shall *thereafter,* that is, after the taking effect of the chapter on April 1, 1869, be applicable to municipalities incorporated under the scheme provided therein, and that municipalities *theretofore* established may exercise the powers conferred by the chapter, though the same may not be conferred by their charters. The section must be taken as speaking at the time of its becoming law. It meant only that the chapter should be law for municipalities chartered generally under it and an amendment to existing charters. It was not intended to bind or to dictate to future Legislatures what should be the law of municipalities thereafter established. The section deals only with municipalities incorporated under the general law of the chapter to which it is an introduction, and with those existing at the date of its enactment. As to municipalities thereafter specially chartered by legislative acts, the section, in reason, left it to the Legislature to define their powers, to create them as the lawmaking body saw fit. It certainly did not undertake to amend them in advance. The chapter does not purport to deal at all with special legislative charters thereafter to be granted.

In at least two of our cases my view seems to have been inferentially recognized: *Harvey* v. *City of Elkins,* 65 W. Va. 305; and *Whelsell* v. *City of Elkins,* 68 W. Va. 709.

The construction of section 1 of chapter 47 herein suggested is not necessarily strict construction. It is only the plain and reasonable purport of the statute. But if strict, it is that which must be resorted to in looking for power of taxation by special assessments.