STATE *ex rel.* W. B. TUCKER

*v.*

THE CITY OF WHEELING, *etc., et al.*

(No. 9771)

Submitted September 18, 1945. Decided October 16, 1945.

W. B. *Casey,* for petitioner.

Carl B. *Galbraith,* A. W. *Petroplus* and Gilbert S. *Bachman,* for respondent.

FOX, JUDGE:

In this mandamus proceeding, invoking the original jurisdiction of this Court, relator seeks to invalidate an

ordinance adopted by the council of the City of Wheeling, a municipal corporation, on the 19th day of June, 1945, which purports to amend an existing ordinance of the city, relating to the Civil Service Commission thereof, by adopting a new article designated as Article 2 thereof, creating a retirement and benefit fund for city employees, other than firemen and policemen; and a later act purporting to include in the then proposed budget of the City of Wheeling for the current fiscal year, an appropriation of the sum of fifteen thousand dollars to carry out the purpose of such amendment to the ordinance aforesaid.

Relator's petition makes parties defendant the City of Wheeling, a municipal corporation, its mayor, the members of its council, manager, treasurer, auditor and clerk. It sets up the ordinance aforesaid, and the inclusion in its budget for the current fiscal year of the sum of fifteen thousand dollars; and then avers that the expenditure of such sum of money from funds created by taxation is not a legal expenditure, for the reason that it is not for a municipal purpose; that municipal corporations depend for their power upon legislative authority, and have no powers of taxation other than those granted by the Legislature; that the council of the City of Wheeling was without power to adopt such ordinance, or to appropriate funds to meet the expense of putting the same into effect; and it prays that the ordinance of June 19, 1945, be removed from its records; that the item of fifteen thousand dollars included in its budget be removed therefrom; and that a rule be awarded against respondents to appear and show cause why the prayer of the petition should not be granted. On this showing we awarded the pending rule in mandamus.

The respondents appeared and filed their joint and several demurrer to the petition, and in support thereof filed a note of argument, in both of which they maintain the validity of the ordinance aforesaid and the appropriation of money to carry the same into effect on two

grounds: (1) That such ordinance and appropriation are authorized under the existing special charter of the City of Wheeling; and (2) that under what is known as the Municipal Home Rule Amendment, and the statute enacted thereunder, being Chapter 56 of the Acts of the Legislature, 1937, and now appearing in Michie's Code, 1943, as Chapter 8A, designated as the municipal home rule statute, it had such power. We will take up these contentions in the order stated.

The City of Wheeling is now operating under a special charter, being Chapter 141 of the Acts of the Legislature, 1935. Pertinent provisions of that charter are as follows:

"Part 1, Section 2—The City of Wheeling shall have all powers of local self-government and home rule that are now, or hereafter may be, granted to municipalities under the constitution and laws of the state, as well as all other powers possible for a municipality to have, whether such power or powers be expressly enumerated in this charter or not, and without any further action on the part of the Legislature. All such powers shall be exercised in the manner prescribed in this charter, or if not prescribed herein, in such manner as shall be provided by ordinance of council."

"Part 1, Section 3—All legislative powers of the city shall be vested, subject to the terms of this charter and of the constitution of the state, in the council. The council shall have authority to pass all ordinances necessary and proper to carry into full force and effect any power, capacity, authority, or jurisdiction which is or shall be granted to, or fixed in the said city, or in the council or any officer of said city; * * *"

"Part 1, Section 53—The council shall prepare a civil service ordinance which shall be applicable to the fire and police departments and to all employees in the administrative services of the city, and which shall provide for one civil service commission for the city. Such ordinance shall be adopted within one year after

this charter becomes effective; and after its adoption it shall not be altered or amended in any material respect except by three-fourths vote of all members elected to council, after notice of such proposed amendment has been published in two Wheeling newspapers of general circulation in the city not later than three days before such proposed amendment is to be acted upon; nor shall such ordinance be repealed except by majority vote of the electorate of the city. Until the general civil service ordinance herein shall have been adopted, the civil service laws applicable to the Wheeling police department and the Wheeling fire department at the time this charter becomes effective shall have the force and effect of provisions of the charter of the city."

Section 2 of Part 1 of the charter quoted purports to be a rather remarkable grant of power. To give to such provision any weight whatever would be to establish a dangerous precedent. Without intending to place undue limitations on the functions of the Legislature, we think it certainly exceeded its power, when, by such a broad and sweeping enactment, it seeks to create power in the future, and totally fails to define the powers granted, and leaves such powers not only to the varying opinions of different and future legislative bodies to define, but goes to the extent of conferring power which might by any possibility be exercised by a Legislature in relation to municipal affairs. Statutes should be enacted to cover specific and current intents and purposes, and so defined that the public may know what laws to obey, and what practices to avoid. We are therefore of the opinion that Section 2 of Part 1 of the special charter of the City of Wheeling, cannot be relied upon as conferring upon the municipal government of that city any powers not specifically, or by necessary implication, granted by the enactment of which it is a part. We gather from the briefs of counsel, and we may take judicial notice thereof, that at the date of the enactment of the charter aforesaid there was in contemplation by

the Legislature the submission to the electorate of what is known as the "Municipal Home Rule Amendment"; and, in fact, at the same session a few days later, a joint resolution was adopted to submit such an amendment, and at the ensuing general election the amendment was duly ratified and then followed the act of the Legislature of 1937, mentioned above, which provided a code of laws for municipalities desiring to adopt the general law thus enacted. Apparently, it was for this reason that the framers of the special charter sought to provide for the exercise of all powers which might be thereafter vested in municipalities under the then proposed home rule amendment, and legislation enacted thereunder.

This leaves the question resting upon Sections 3 and 53 of the special charter quoted above. Section 3 provides that "The council shall have authority to pass all ordinances necessary and proper to carry into full force and effect any power, capacity, authority, or jurisdiction which is or shall be granted to, or fixed in the said city, or in the council or any officer of said city; * * *". Section 53 provides that "The council shall prepare a civil service ordinance which shall be applicable to the fire and police departments and to all employees in the administrative services of the city, and which shall provide for one civil service commission for the city. * * *". Such ordinance was required to be adopted within one year after the charter became effective, and we assume was so adopted. But it will be noted that this section of the city charter does nothing more than authorize and require the adoption of a civil service ordinance. Nothing appears therein relating to a pension or retirement fund for any type of city employees. It is argued that a pension or retirement fund is necessary to make effective and workable any system of civil service, and this contention, of course, applies to all types of city employees. This may be true, but it does not necessarily follow that this creates power by implication to create such pension or retirement fund, unless there is some legislative authority therefor. The argument for

a pension or retirement fund for policemen and firemen is possibly stronger than for the other employees of the city, because of the peculiar training required and the general character of the work in which they are engaged. But it is to be noted that heretofore, when pension and retirement funds for firemen and policemen were sought, it has always been done by direct legislative action, as is evidenced by the fact that Article 6 of Chapter 8 of the Code of 1931 provides for "Pension or relief fund for firemen and policemen", and this section has been retained and amended throughout the years, particularly Chapter 69, Acts of the Legislature, 1935, and as late as 1945, when by Chapter 93 of the legislative session of that year, this article was further amended. We do not question the argument that the expenditure of municipal funds for the purpose of providing for the pension and retirement of employees of the city, other than firemen and policemen, is a proper expenditure of municipal funds, provided there is legislative authority for the same; but we do not believe that the statutory law, as it now exists, either by general law or by special charter of the City of Wheeling, confers upon the council of that city the power to create such a fund, or make expenditure of public moneys to carry the same into effect. Unless backed by impelling reasons, it is an unsafe theory of government to authorize the expenditure of public moneys through mere implication. Some municipalities in the State, with proper concern for the public interest and welfare of employees, have from time to time asked the Legislature for authority to establish policemen and firemen pension and retirement funds. This they could as well have done with respect to other classes of employees, but they have not done so; and until they secure such general legislative authority, either by direct legislative enactment, or by adoption of the home rule for municipalities statute, in the manner provided by law, they cannot create such funds. The City of Wheeling, operating under a special charter, and not operating under the statute enacted under the home rule amend-

ment does not, in our opinion, now possess the power to create such a fund, or to expend public moneys therefor.

But it is contended that even if such fund cannot be created and such expenditures made under the special charter of the City of Wheeling, it may be done under the broad powers granted to municipalities under Code, 8-4-10, relating to powers conferred upon municipalities by general legislation. That statute provides, among other things, that "The council shall have plenary power and authority therein by ordinance or resolution as the case may require * * * to provide a revenue for the town and appropriate the same to its expenses * * *". It is apparent that the language quoted does not grant expressly to municipalities the power to establish a retirement and benefit fund for municipal employees, and does not even suggest, much less imply, the grant of such power.

It is also contended that The City of Wheeling is vested with powers to create the fund and make expenditures therefrom under the "Municipal Home Rule Law," Chapter 56, Acts of the Legislature 1937. Section 11, Article 4, of that Act provides: "Cities of class I and class II shall, and cities of class III may provide for pension and relief funds for firemen or policemen, or both, by charter provisions, or by ordinance, * * *. A city may extend a pension and relief fund to include all or specific classes of other city employees."; and by Section 1 of Article 5 of said Act, it is provided that: "A city shall have power: (1) To levy and collect taxes on real and personal property for any municipal purpose within the limitations and subject to the classifications prescribed by the constitution and general laws of the state. * * *". These provisions would seem to authorize a city operating under the home rule statute to create a retirement fund, not only for policemen and firemen, but other classes of employees as well.

But is the City of Wheeling in any sense operating under this chapter? Section 9 of Article 1 of the municipal home rule statute provides: "The corporate being and powers of every city now existing is hereby confirmed. General and special laws and municipal charters in effect upon the adoption of this chapter shall remain in operation and effect unless amended or repealed by this chapter, or until amended or repealed by a general law hereafter enacted, or until a municipal charter is amended in accordance with article two of this chapter." By Section 10, it is provided: "A city which shall continue to operate under a charter in force upon the effective date of this chapter may by charter amendment hereunder adopt any of the powers conferred by articles four and five of this chapter. It shall derive none of those powers from this chapter until so adopted. * * *." Other provisions of the municipal home rule statute provide for revision of the existing charter by vote of the people. Section 15 of Article 2 provides: "The voters of a city may amend an existing special charter or a charter adopted under the provisions of this chapter. An amendment may be initiated in the same manner as for the adoption of a charter. * * *" There is nothing in this record indicating that the City of Wheeling has ever adopted the municipal home rule statute, or any part thereof; and, therefore, we do not think it can now rely upon the provisions thereof to sustain the ordinance and the appropriation of money here in question. It could, by proper methods, amend its special charter, and adopt that provision of the municipal home rule statute which authorizes a city to extend a benefit or relief fund to include all or specific classes of other city employees, the other employees being firemen and policemen, but it has never done so; and in the face of the clear limitations provided for in the municipal home rule statute, enacted two years after the special charter under which the city now operates, we think it is strictly confined to the provision of its special charter. Even should we be inclined to give some

effect to Section 2 of Part 1 of the special charter of the City of Wheeling, the same is now clearly superseded by the subsequent enactment which specifically provides that a city shall continue to operate under its charter then in force until it adopts a charter amendment, and in which it is specifically provided that it shall derive none of the powers granted by the municipal home rule statute until it is so adopted.

In this situation the writ prayed for will be awarded.

*Writ awarded.*