HERMAN L. HOGAN, JR., *et al., etc.,*

*v.*

CITY OF SOUTH CHARLESTON, *etc., et al.*

(No. 14275)

Decided December 18, 1979.

*Charnock & White, John N. Charnock, Jr.,* for appellants.

*Larry G. Kopelman* for appellees.

MILLER, JUSTICE:

Herman L. Hogan, Jr., and other members of the South Charleston Board of Park and Recreation Com-

missioners [hereinafter Board] seek a determination of whether the right to appoint the Recreation Director of the City of South Charleston lies with its Mayor or with the Board. The Board claims the right pursuant to W. Va. Code, 8-21-7. The Mayor asserts the right to appoint under the provisions of the South Charleston City Charter which became effective on July 1, 1963.

The Board was created by means of a July 1, 1973, City ordinance pursuant to W. Va. Code, 8-21-1, *et seq.*, which provides for the establishment of boards of park and recreation commissioners. At that time, the City Recreation Director was Robert T. Anderson, who was appointed to the position by a former mayor and who was retained by the Board after its creation.

It appears that Mr. Anderson functioned as the full-time chief administrative employee of the Board. On July 6, 1977, he tendered his resignation to the Board, effective as of July 22, 1977. At a special meeting of the Board held on July 11, 1977, the Assistant Recreation Director, Robert Goff, was appointed by the Board as the Acting Recreation Director.

On July 21, 1977, Mr. Anderson by letter resigned his position as of that date, and on the same day the Mayor by letter appointed David Pentz as Recreation Director. Mr. Pentz accepted the appointment. In response to the Mayor's action, the South Charleston City Council passed a resolution on July 21, 1977, declaring that in creating the Board, it was their intention that it have exclusive control over the City's park and recreation system. A more resolute position by the Council followed, when by an ordinance adopted August 4, 1977, it sought to abolish the salary of the Recreation Director.

When this impasse between the City's executive, legislative and administrative branches had been reached, the Board instituted this declaratory judgment action. The Circuit Court of Kanawha County held that the charter provisions prevailed and that the right to make the appointment was therefore vested in the Mayor.

In 1969 the Legislature made an extensive revision of Chapter 8 of the West Virginia Code. One of the principal purposes of our State municipal law set out in W. Va. Code, 8-1-1,[1] was to provide a degree of uniformity to the type of powers granted to municipalities by the Legislature. Prior to 1969, the powers of a given municipal corporation were embodied in several scattered and sometimes conflicting sources, *viz.*, special legislative charters, the general municipal statutes found in former Chapter 8 of the Code and powers granted under the home rule provisions of former Chapter 8A of the Code.[2]

The new State municipal law did not abolish existing municipal charters, W. Va. Code, 8-1-5, but did provide a set of specific interpretive guidelines to resolve conflicts or dissimilarities between the provisions of the new municipal law and existing charter provisions, W. Va. Code, 8-1-6. This latter Code section makes clear that where there is an ambiguity, or possible conflict between the State municipal law and a charter provision, the State municipal law controls.[3]

---

[1] "The purpose of this chapter is to effect a recodification of the basic municipal law of this State and of various statutory provisions relating to certain intergovernmental relations involving municipalities, counties and other units of government, to provide as much uniformity as possible between the powers, authority, duties and responsibilities of special legislative charter municipalities and all other municipalities, and to give effect to the 'Municipal Home Rule Amendment' to the Constitution of this State, being section 39(a), article VI of said Constitution."

[2] For illustrations of the problems caused by divergent sources of municipal powers, see *State ex rel. Koontz v. Board of Park Commissioners*, 131 W.Va. 417, 47 S.E.2d 689 (1948) (city charter provisions of 1925 held controlling over general statute enacted in 1939); *State ex rel. Tucker v. City of Wheeling*, 128 W.Va. 47, 35 S.E.2d 681 (1945) (home rule powers not conferred on city unless it had properly adopted them by charter amendment); *Probasco v. The Town of Moundsville*, 11 W.Va. 501 (1877) (general state law conferring power on municipality may be exercised by city council).

[3] W. Va. Code, 8-1-6, sets out five categories of potential relationship between the new State municipal law and any particular charter provisions, and gives the interpretive solution. Category (1) is of particular interest:

It is significant that prior to the adoption of the 1969 recodification of our State municipal law, a provision of W. Va. Code, 8-1-2 (1931), conferred the right on municipalities having special charters to adopt the general powers contained in Chapter 8 of the Code, but, by an express proviso in this Code section, a provision of the State municipal law which was inconsistent with a charter provision would not be controlling unless the municipality had adopted that statutory provision.[4] Before this proviso was written into our law in 1931, it appears that the Court was of the view that a municipality could not exercise powers conferred by the general municipal law which were inconsistent with a charter provision. *City of St. Marys v. Locke*, 73 W.Va. 30, 80 S.E. 841 (1913).

From the foregoing, it is apparent that in recodifying the State municipal law in 1969 in order to achieve uniformity in the powers granted to municipalities, the Legislature intended that the provisions of the State municipal law should have primacy over conflicting provisions in a municipal charter. W. Va. Code, 8-1-6.

Here, there can be no dispute that prior to July 1, 1973, the charter provision controlled and the Mayor had the right to appoint the Recreation Director. Once

---

"(1) As to any particular charter provisions, such charter provisions may be inconsistent or in conflict with the pertinent provisions of this chapter; ...."

"As to possibility (1), the pertinent provisions of this chapter shall supersede such conflicting or inconsistent charter provisions and shall be deemed amendments to such charters...."

[4] The proviso of former W. Va. Code, 8-1-2, was:

"Provided, that if the charter of any municipal corporation contains a provision or provisions purporting to cover any matter covered by this chapter, such municipal corporation may adopt the applicable provision or provisions of this chapter, even though such provision or provisions be inconsistent with the corresponding provision or provisions of the charter, and upon such adoption and until revocation of such adoption, the applicable provision or provisions of this chapter shall operate as an amendment to the charter of such municipal corporation. Such adoption or revocation shall be by council except where this chapter requires other municipal action, in which case the method required by this chapter shall be followed."

the Board was created, however, it obtained all of the powers provided by W. Va. Code, 8-21-1, *et seq.*, among which are those set out in W. Va. Code, 8-21-7:

> "Any board operating under the provisions of this article shall have complete and exclusive control and management of all of the properties which shall be operated in connection with the public park and recreation system for the city, and shall have power to employ such persons as, in its opinion, may be necessary for the establishment, construction, improvement, extension, development, maintenance or operation of the property under its control, at such wages or salaries as it shall deem proper, and shall have full control of all employees."

We cannot conceive a clearer expression of legislative intent to place in such a board control of the entire administration of the park and recreation system, once a city elects to operate its park and recreation system under W. Va. Code, 8-21-1, *et seq.*[5]

Of particular significance in the foregoing statute is the language that the board "shall have power to employ such persons as, in its opinion, may be necessary," and the further statement that "[the board] shall have full control of all employees." The clear purpose of this language is to ensure that all personnel employed in a city's park and recreation system shall be under the complete control of its board. This control necessarily includes the right to hire the chief administrative officer of the park and recreation system. In the present case, such full-time administrator had the title of Recreation Director.

Not only is the statutory language unequivocal that the board has the power to hire all employees of the

---

[5] The fact that a board of park and recreation commissioners may be dependent on city funds in the operation of its park and recreation system, W. Va. Code, 8-21-12 and -13, does not diminish its actual administrative authority, but obviously the city can determine to a great extent the physical development of the system through its fiscal policy.

park and recreation system, but there is a certain elemental logic in the legislative design. It requires no great feat of imagination to realize the mischief that could result if the chief administrative officer were not appointed by the board. Because he would not be controlled by or answerable to the board, he could well thwart its policies. Yet, by statute the board is in charge of formulating policy and overseeing the system.

Once it is determined that W. Va. Code, 8-21-7, places the appointment of all of a city's park and recreation personnel in its board and that the chief administrative officer is its employee, there is a clear conflict in the present case between the State statute and the 1963 charter provision authorizing the Mayor to appoint the Recreation Director. The first interpretive rule of W. Va. Code, 8-1-6, states: "[T]he pertinent provisions of this chapter shall supersede such conflicting or inconsistent charter provisions and shall be deemed amendments to such charters."

We, therefore, conclude that W. Va. Code, 8-21-7, authorizes the board of park and recreation commissioners of a city to hire all employees of its park and recreation system, including its chief administrative officer.[6]

For the foregoing reasons, we reverse the judgment of the Circuit Court of Kanawha County.

*Reversed.*

---

[6] The City of South Charleston raised a second issue of whether its City Council could, by ordinance, terminate the Recreation Director's salary. We decline to address this issue, as it is not clear from the factual stipulation whether anyone actually assumed the position of Recreation Director once the two conflicting appointments were made.