305 S.E.2d 771

**STATE ex rel. Robert HILL**

v.

**Honorable Robert K. SMITH, Judge, etc.**

No. 15880.

Supreme Court of Appeals of West Virginia.

July 7, 1983.

Dissenting Opinion July 21, 1983.

Michael R. Cline, Allen, Cline & Forbes, Charleston, for relator.

Philip B. Hereford, Charleston, for respondent.

HARSHBARGER, Justice:

Can a municipal deputy clerk in a home rule city issue a valid warrant? Robert Hill, about to be prosecuted on a Charleston city charge for shoplifting, hopes not.

■ Our constitution provides for Home Rule for Municipalities, Article VI, Section 39(a):

The legislature shall provide by general laws for the incorporation and government of cities. . . . Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to · its municipal affairs: *Provided, that any such charter or amendment thereto, and any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted.* (Emphasis supplied.)

Municipalities are therefore entitled to enact charters and local laws and ordinances that are not inconsistent with statutes or the constitution. *See also* W.Va.Code, 8-1-6.

The constitution provides that the legislature may authorize establishment of municipal courts, and may name officers who can issue and execute writs, warrants and process:

The legislature may provide for the establishment in incorporated cities, towns or villages of municipal, police or mayors' courts, and may also provide the manner of selection of the judges of such courts. W.Va. Const. art. VIII, § 11.

The legislature may designate the courts and officers or deputies thereof who shall have the power to issue, execute or serve such writs, warrants or any other process as may be prescribed by law, and may specify before what courts or officers thereof such writs, warrants or other process shall be returnable. The legislature may also designate the courts and officers or deputies thereof who shall have the power to admit persons to bail. No person exercising such powers shall be compensated therefor on a fee basis. W.Va. Const. art. VIII, § 12.

The legislature has complied with these constitutional directives in W.Va.Code, Chapter 8. In Article 10, it specified the duties of mayor, police court or municipal judge, and recorder. The mayor's powers include:

He shall have jurisdiction to hear and determine any and all alleged violations thereof [of ordinances, orders, bylaws, acts, resolutions, rules and regulations of the municipality's governing body] and to convict and sentence persons therefor. . . . [P]erform all duties vested by law in a justice of the peace. . . . Upon complaint he shall have authority to issue a search warrant in connection with the violation of a municipal ordinance. Any search warrant, warrant of arrest or other process issued by him may be directed to the chief of police or any member of the police department. . . . W.Va. Code, 8-10-1 (in part).

W.Va.Code, 8-10-2, specifies the powers of a police or municipal court judge:

Notwithstanding any charter provision to the contrary, any city may provide by

charter provision and any municipality may provide by ordinance for the creation and maintenance of a police or municipal court, for the appointment or election of an officer to be known as police court judge or municipal court judge, and for his compensation, and authorize the exercise by such court or judge of such of the jurisdiction and the judicial powers, authority and duties set forth in section one [§ 8–10–1] of this article and similar or related judicial powers, authority and duties enumerated in any applicable charter provisions, as set forth in the charter or ordinance.

So a city can have a municipal court/police court judge who may have the same judicial powers that a mayor has. A municipal court's and mayor's authority to issue warrants is the same as our magistrates. W.Va.Code, 8–10–1 and 8–10–2. W.Va.Code, 50–2–3 provides that only magistrates may issue criminal arrest and search warrants.

W.Va.Code, 8–10–2 limits the authority to issue warrants to two municipal officers, the mayor and municipal or police court judge. We have used the maxim, *expressio unis est exclusio alterius,* in finding invalid, city ordinances that went beyond power granted by the legislature. *State ex rel. Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970). The legislature had constitutional authority to extend this power to "neutral and detached" clerks, but it did not choose to do so. W.Va. Const. art. VIII, § 12; *Shadwick v. Tampa, infra.*

Charleston's City Charter provides at § 44:

The municipal judge shall be ex officio a justice and a conservator of the peace, and with authority to issue processes for all offenses committed within the police jurisdiction of the City of Charleston, of which a justice of the peace has jurisdiction under state statutes, and for all violations of any city ordinances, and shall have charge of and preside over the municipal court of such city.... Before

trying any person charged with any violation of any state law or ordinance a warrant specifying the offense or violation charged shall be issued as herein provided....

Section 45 sets out qualifications of the municipal judge, and then states:

In the absence of, or in case of the inability of the municipal judge to perform his duties, the municipal court clerk shall act as municipal judge in his stead, and in the event that neither the municipal judge nor the municipal court clerk can for any cause perform such duties, then the mayor shall act as municipal judge.[1]

Section 94 provides:

The municipal judge, mayor, city clerk, municipal court clerk, chief of police, or in the absence of the chief of police, the captains of police and lieutenants of police shall each have authority to issue warrants for all offenses committed within the police jurisdiction of the City of Charleston. Any vacancy in the office of municipal judge shall be filled by appointment by the mayor until the next election.

This provision clearly violates the Fourth Amendment of the United States Constitution, in that it allows police and law enforcement officials to issue warrants. *Shadwick v. Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh. denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120. *See also Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The United States Supreme Court has decided that the person issuing a warrant "must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. Tampa,* 407 U.S. at 350, 92 S.Ct. at 2123, 32 L.Ed.2d at 788. While it is not necessary that the

---

1. W.Va.Code, 8–10–3 authorizes a municipal recorder to act in a mayor's stead when a mayor is absent or ill. The legislature has not authorized anyone to act in the absence of the municipal judge and, therefore, the municipal clerk may not do so.

warrant issuer be a lawyer or a judge,[2] the person may not be a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). *See also State v. Slonaker,* 167 W.Va. 97, 280 S.E.2d 212 (1981); *State v. Wotring,* 167 W.Va. 285, 279 S.E.2d 182, 187–188 (1981); *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980); *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975). This city charter provision, Section 94, is invalid because it violates our state and federal constitutions, by allowing law enforcement officers to issue arrest warrants. In *State ex rel. Sahley v. Thompson,* 151 W.Va. 336, 151 S.E.2d 870 (1966), we found a similar municipal charter provision valid. We were wrong, and overrule the Syllabus in that case.[3]

Section 94 has another defect: it extends authority to issue warrants far beyond the two officials specified by statute. Municipalities are legislative creatures and their powers derive directly and solely from those granted to them by state law. *Hogan v. South Charleston,* 164 W.Va. 136, 260 S.E.2d 833 (1979); *Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581, 584 (1979). *Accord,* 56 Am.Jur.2d *Municipal Corporations* § 194; 62 C.J.S. *Municipal Corporations* §§ 107, 117. Provisions in city charters that are inconsistent with, conflict with or exceed powers granted by the legislature are void. W.Va. Const. art. VI, § 39(a). *Accord Rogers v. South Charleston,* 163 W.Va. 285, 256 S.E.2d 557 (1979); *State ex rel. City of Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970).

In recodifying the State municipal law in 1969 in order to achieve uniformity in powers granted to municipalities, the Legislature intended that the provisions of the State municipal law should have primacy over conflicting provisions in a municipal charter. W.Va.Code, 8–1–6. Syllabus Point 2, *Hogan v. South Charleston, supra.*

Any charter provisions or city ordinances that permit municipal employees other than mayors or municipal court judges to issue arrest warrants are invalid. W.Va. Const. art. VII, § 12; art. VI, § 39(a); W.Va.Code, 8–10–1 and 8–10–2. Therefore, Sections 16–4(c)[4] and 16–5[5] of the Charleston City Code also fail to meet these standards because they permit the municipal court clerk and deputy clerks to issue warrants.

Hill was arrested on a warrant issued by the deputy clerk. Because the clerk was without authority to issue warrants, we prohibit any further court proceeding based on that warrant.

Prohibition granted.

MILLER, Justice, dissenting:

I respectfully dissent because I believe that the majority has failed to understand

---

2. Some courts do require the arrest warrant issuer to be a judicial officer. *Caulk v. Municipal Court,* Del., 243 A.2d 707 (1968); *State v. Paulick,* 277 Minn. 140, 151 N.W.2d 591 (1967); *State ex rel. White v. Simpson,* 28 Wis.2d 590, 137 N.W.2d 391 (1965).

3. Syllabus, *State ex rel. Sahley v. Thompson, supra:*
    "Article 7, Section 7.6 of the charter of the City of South Charleston delegating to the mayor, city clerk, clerk of the municipal court, chief of police, or, in the absence of the chief of police, the captains and lieutenants of police the authority to issue warrants for offenses in violation of the ordinances of that city is not invalid as in contravention of Article V, Section 1, of the constitution of this state and a warrant for a violation of a city ordinance issued by a lieutenant of police in the absence of the chief of police is valid."

4. Charleston City Code, § 16–4(c), referring to duties of the municipal court clerk:
    *"Fines, costs, process and oaths.* He shall tax all costs in the municipal court and make out all executions for fines, penalties and costs imposed by the municipal judge, make out and issue all processes of the court and sign them as clerk, and administer oaths."

5. Charleston City Code, § 16–5:
    "The mayor may appoint, within the limit of fund available, one or more deputy municipal court clerks who shall have, in addition to such other duties as may be assigned to them by the municipal court clerk or the municipal judge, the authority to administer oaths to complainants and to issue arrest warrants thereon for all violations of this Code and other municipal ordinances."

the history and application of the Home Rule for Municipalities amendment to the West Virginia Constitution, Article VI, Section 39(a). This amendment does not foreclose a municipality which has obtained a special charter prior to the adoption of the Home Rule for Municipalities amendment in 1936 from utilizing the provisions of its special charter. The only inhibition is that special charter provisions cannot be utilized if they are inconsistent with our general municipal statutes.

The majority has concluded that Section 45 of the City of Charleston's Charter that authorizes the municipal court clerk to act in the absence of the municipal judge, and Section 94 of its Charter which authorizes the municipal court clerk to issue warrants are invalid because there are no similar provisions in our general municipal statutes. This conclusion would be correct if special charters were abolished or if the Charleston Charter provisions were in conflict with our general municipal statutes. However, special charters have not been abolished nor are the Charter provisions in conflict since the general municipal statutes do not have any contrary provisions.

We addressed the general effect of the Home Rule for Municipalities amendment in *Matter of City of Morgantown*, 159 W.Va. 788, 226 S.E.2d 900, 903 (1976):

"The Municipal Home Rule Amendment, ratified in 1936, required the Legislature to provide by *general law* for the incorporation and government of all municipalities. Prior to this constitutional amendment, the Legislature with very limited restriction, was empowered to exercise its absolute power over municipalities through special acts." (Emphasis in original; footnotes omitted)

After the adoption of the Home Rule for Municipalities amendment, the Legislature enacted W.Va.Code, 8A–1–1, *et seq.* (1937), entitled Municipal Home Rule, which was a comprehensive statute relating to the procedures that municipalities could follow in order to obtain Home Rule powers as set out in Chapter 8A. Under the provisions of W.Va.Code, 8A–1–9 (1937), the existing status of special charter cities was expressly confirmed:

"The corporate being and powers of every city now existing is hereby confirmed. General and special laws and municipal charters in effect upon the adoption of this chapter shall remain in operation and effect unless amended or repealed by a general law hereafter enacted, or until a municipal charter is amended in accordance with article two of this chapter."

In *State ex rel. Tucker v. City of Wheeling*, 128 W.Va. 47, 35 S.E.2d 681 (1945), we recognized that a special charter city could not claim the powers under the Municipal Home Rule Act unless it had elected to come within it by holding a charter election and adopting Home Rule powers as set out in W.Va.Code, 8A–2–1, *et seq.* (1937).

In 1969, the Legislature enacted a comprehensive revision of our municipal statutes and we spoke to the scope of this act in *Hogan v. City of South Charleston*, 164 W.Va. 136, 260 S.E.2d 833, 835 (1979):

"In 1969 the Legislature made an extensive revision of Chapter 8 of the West Virginia Code. One of the principal purposes of our State municipal law set out in W.Va.Code, 8–1–1, was to provide a degree of uniformity to the type of powers granted to municipalities by the Legislature. Prior to 1969, the powers of a given municipal corporation were embodied in several scattered and sometimes conflicting sources, *viz.*, special legislative charters, the general municipal statutes found in former Chapter 8 of the W.Va.Code and powers granted under the home rule provisions of former Chapter 8A of the Code.

"*The new State municipal law did not abolish existing municipal charters*, W.Va.Code, 8–1–5, but did provide a set of specific interpretive guidelines to resolve conflicts or dissimilarities between the provisions of the new municipal law and existing charter provisions, W.Va.Code, 8–1–6." (Emphasis added; footnotes omitted)

That the 1969 Act did not abolish existing special legislative charters can be seen from the definition of the word "city" in W.Va.Code, 8–1–2(a)(2) (1969):

" 'City' is a word of art and shall mean, include and be limited to any Class I, Class II and Class III city, as classified in section three [§ 8–1–3] of this article (except in those instances where the context in which used clearly indicates that a particular class of city is intended), heretofore or hereafter incorporated as a municipal corporation under the laws of this State, however created and *whether operating under (i) a special legislative charter, (ii) a home rule charter framed and adopted or revised as a whole or amended under the provisions of former chapter eight-A of this Code or under the provisions of article three [§ 8–3–1 et seq.] or article four [§ 8–4–1 et seq.] of this chapter, (iii) general law, or (iv) any combination of the foregoing.*" (Emphasis added)

Furthermore, and as discussed in *Hogan v. City of South Charleston, supra,* the Legislature created a statutory formula under W.Va.Code, 8–1–6 (1969), for classifying and solving potential conflicts between the provisions of old legislative special charters and the provisions of the 1969 Municipal Code of West Virginia. Of particular applicability to the present case is classification number 4 which is: "As to any particular charter provisions, there may be no counterpart of such provisions in this chapter." [1]

In the latter part of this statute, the Legislature has resolved the class four problem as follows:

"As to possibility (4), the charter provisions shall remain in operation and effect until amendment or repealed by general law hereafter enacted or until hereafter supplanted by a new charter or revised as a whole or amended in accordance with the provisions of this chapter."

There is no argument over the fact that our general Municipal Code does not contain any provision relative to the right of a municipal court clerk to issue warrants. The majority ignores the provisions of W.Va.Code, 8–1–6 (1969), and in particular the class four language which would authorize validation of Charleston's special charter provision.

While the United States Supreme Court has held that a person issuing a warrant must be neutral and detached from law enforcement activities, it is clear that a municipal clerk who is not connected to law enforcement can constitutionally perform such functions. This was the unanimous opinion of the United States Supreme Court in *Shadwick v. City of Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), where the Court sanctioned warrants issued by the Clerk of the Municipal Court of Tampa.[2]

The fundamental error of the majority lies in not realizing that Charleston's special charter provision authorizing a municipal court clerk to issue warrants is a valid provision since there is no counterpart under our general municipal statutes.

1. The relevant portion of W.Va.Code, 8–1–6 (1969), classifying the potential conflicts is:

"[W]hen the provisions of existing special legislative charters are compared with and are considered in the light of the provisions of this chapter, there are five basic possibilities as to the relationship between such charter provisions and the provisions of this chapter, namely: (1) As to any particular charter provisions, such charter provisions may be inconsistent or in conflict with the pertinent provisions of this chapter; (2) although relating to the same subject matter and although not inconsistent or in conflict with any provisions of this chapter, certain charter provisions may be sufficiently different from pertinent provisions of this chapter as to indicate, as a matter of practical construction, that either the char-

ter provisions or the provisions of this chapter, but not both, should be applicable; (3) although varying in certain respects, certain charter provisions may be similar to and in essential harmony with corresponding provisions of this chapter; (4) as to any particular charter provisions, there may be no counterpart of such provisions in this chapter; and (5) as to any provisions of this chapter, there may be no counterpart charter provisions."

2. I agree that to the extent that Section 94 of the City of Charleston's Charter authorizes law enforcement personnel to issue warrants, it is unconstitutional and that *State ex rel. Sahley v. Thompson,* 151 W.Va. 336, 151 S.E.2d 870 (1966), which sanctions this practice, must be overruled.