JAMES R. POYNTER, Petitioner, v. JOSEPH R. WALLING, Mayor of the Town of Elsmere, Respondent.

EARL E. DAVIS, Petitioner, v. JOSEPH R. WALLING, Mayor of the Town of Elsmere, Respondent.

(*February* 1, 1962.)

STOREY, J., sitting.

*Henry A. Wise, Jr.*, for Petitioner, James R. Poynter.

*David B. Coxe, Jr.*, and *Emmett J. Conte, Jr.*, for Petitioner, Earl E. Davis.

*Aubrey B. Lank* and *Victor F. Battaglia* (of the firm of Theisen and Lank) for Respondent.

Superior Court for New Castle County, Nos. 1269 and 1576, C. A., 1960.

STOREY, J.:

Petitioner, James R. Poynter, was charged with driving a motor vehicle in excess of the speed limit in violation of Ordinance No. 74(17) (a) (1) (a), and with operating a motor vehicle while under the influence of intoxicating liquor in violation of Ordinance No. 74(1) (a), both of the Town of Elsmere. Petitioner, Earl E. Davis, was charged with violation of the latter Ordinance—No. 74(1) (a). Both Petitioners filed petitions for a Writ of Prohibition and a rule to show cause in this Court. This Court issued, in each case, a rule to show why a Writ of Prohibition should not issue against Joseph R. Walling, Mayor of the Town of Elsmere, prohibiting him from proceeding further, and ordering a stay of proceedings until final disposition of these petitions. All parties filed briefs covering the legal questions involved.

This opinion consolidates the two cases since they involve identical legal questions and since the briefs have been filed in view of such consolidation.

Petitioners have set forth a number of contentions in support of the issuance of Writs of Prohibition. I consider two such contentions of extreme importance and will consider these two in detail. The other contentions will be disposed of rather summarily.

First, Petitioners assert that certain provisions of An Act to Re-incorporate the Town of Elsmere are unconstitu-

tional insofar as they grant to the Mayor the powers of a Justice of the Peace. The argument is that the same person cannot constitutionally be vested with both judicial and executive powers.

This necessitates a somewhat detailed consideration of the Enabling Act creating the Town of Elsmere. (50 *Del. Laws,* Ch. 428 (1955).) Section 5 thereof states that the government of the Town shall be vested in a Mayor and a Town Council. The mayor shall receive an annual salary of $300.00. Section 8. "The Mayor shall be the executive of the Town. He shall preside at meetings of the Council, but shall have no vote therein, except in case of ties." Section 10. "The Council shall constitute the legislative body of the Town of Elsmere." Section 11. Section 20 provides as follows:

"* * * The Mayor shall have and exercise, within the limits of the Town, all the powers, authorities, jurisdiction and cognizance of a Justice of the Peace of and over all breaches of the peace and other offenses within the said Town, with power to arrest and hold for bail, or fine and imprision all offenders, and of and over all fines, forfeitures and penalties which may be prescribed by any law of this state or by ordinances of the Town Council regularly passed and enacted for the government of the said Town; * * *. The fees of said Mayor shall be the same as are allowed Justices of the Peace for similar services under the law of this State; * * *.It shall be the duty of the Mayor to keep a book or docket to be called the 'Mayor's Court Docket of Elsmere' to be provided by the Council, in which all his official acts shall be entered, which docket may be inspected from time to time by the Council, * * *.

"The Mayor shall submit to the Council at each regular meeting thereof a report of all fines and costs collected by him during the ensuing period, and shall pay over to the Council all such fines as well as costs whereupon the Council, if it be satisfied with his report, shall pay to him the amount

of said costs in the same manner as other disbursements are allowed and paid. Failure by the Mayor to pay over said fines and costs or failure to make a report to the Council as aforesaid shall constitute a misdemeanor, which shall be cognizable before any Justice of the Peace resident in New Castle County and shall be punished by a fine of not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00)."

It is Petitioners' contention that these provisions are unconstitutional, insofar as they vest both the executive and the judicial powers in the Mayor, on the following grounds: (1) the two functions are incompatible; and (2) the provisions violate the doctrine of separation of powers of the Delaware Constitution.

Petitioners do not point out in what ways the Mayor's two functions are incompatible other than the broad assertion that vesting both judicial and executive powers in one person is incompatible *per se*. Nor does any conflict in the two duties appear from the reading of the provisions. Though the Mayor is the executive of the Town, he has very limited authority to act unless authorized to so act by the Town Council which is the legislative body. See Section 10. The Mayor receives a stated annual salary plus the costs of cases he hears, at the discretion of the Council. His judicial duties are closely checked by the Council. See Section 20. He is not a member of the Council and has no vote at Council meetings except in case of a tie.

What constitutes incompatibility of offices or functions is a difficult question. No standard rule can be laid down. Incompatibility is said to exist where one duty is in subordination of another; where there is a conflict in the two offices; or where the duties and functions are inherently inconsistent and repugnant. 42 *Am. Jur.* Public Officers § 70 (1942); *Throop, Public Officers* § 33 (1892). No such incompatibility is apparent in the Mayor's functions herein.

■ It seems well established that a mayor may be clothed with judicial powers. *Tumey v. Ohio*, 273 *U. S.* 501, 534, 47 *S. Ct.* 437, 71 *L. Ed.* 749 (1927); *Dugan v. Ohio*, 277 *U. S.* 61, 48 *S. Ct.* 439, 72 *L. Ed.* 784 (1928); *State ex rel. Emerson v. Monroe*, 16 *La. Ann.* 395 (La. Sup. Ct. 1861); 3 *Antieau, Municipal Corporation Law* § 26.04 (1958); 2 *Dillon, Municipal Corporations* § 748 (5th ed. 1911); 62 *C. J. S.* Municipal Corporations § 322(b) (1949). Cases to the contrary are based on the premise that the duties of mayor and judge are absolutely incompatible, *e.g.*, where the mayor was judge of the police court and as judge he had exclusive jurisdiction to try cases involving neglect of his duties as mayor. *Lesieur v. Lausier*, 148 *Me.* 500, 96 *A.* 2d 585, 587 (Me. Sup. Jud. Ct. 1953); *Howard v. Harrington*, 114 *Me.* 443, 96 *A.* 769, 771 *L. R. A.* 1917A, 211 (Me. Sup. Jud. Ct. 1916).

■ The wording of *Del. Code Ann.* tit. 11 § 4503 (1953) indicates that our General Assembly contemplated that a mayor might be vested with judicial powers:

"*Any person convicted before any* alderman *or mayor of any incorporated city or town* in this State for the violation of any city or town ordinance may appeal from such conviction to the Superior Court * * *." (Emphasis added.)

Therefore, based upon my examination of the provisions of 50 *Del. Laws*, Ch. 428 (1955), and supported by the authorities cited, I hold that the Mayor's functions as executive and judicial officer are not incompatible.

■ Petitioner's next argument is that the vesting of both executive and judicial powers in the Mayor is repugnant to the doctrine of separation of powers of the Delaware Constitution. It is clear that this doctrine has been recognized by our Courts. *Du Pont v. Du Pont*, 32 *Del. Ch.* 413, 85 *A.* 2d 724, 728 (Del. Sup. Ct. 1951); *Van Winkle v. State*, 4 *Boyce* 578, 91 *A.* 385, 398 (Del. Sup. Ct. 1914). Our Supreme Court,

in *In re Opinion of the Justices,* 8 *Terry* 117, 88 *A.* 2d 128, 138 (1952), stated as follows:

"It is quite true that, broadly speaking, the doctrine of separation of powers is fundamental in American constitutional law * * * and our courts have affirmed that from the beginning our state government has been divided into the three departments, legislative, executive and judicial. * * * It is not true, however, that the doctrine of separation of powers has been adhered to with theoretical rigor. On the contrary, the Constitutions of 1792 (art. VIII, Sec. 3) and 1831 (art. II, Sec. 16) provided for the exercise of certain executive powers by the General Assembly, and under the present constitution the General Assembly may exercise the power of appointment to office. * * * Moreover (and more to the point here), the Constitution of 1897 expressly requires the performance by the members of the judiciary of the duty—chiefly administrative—of canvassing election returns. * * * The inference may be drawn that partial relaxation of the doctrine of separation of powers is not repugnant to the will of the people * * *."

■ I have been unable to find any case in this jurisdiction applying the doctrine to municipal corporations. On the contrary, the rule appears to be that the constitutional requirement of separation of the three governmental departments applies to state government and not to the government of municipal corporations and their officers. *Eckerson v. City of Des Moines,* 137 *Iowa* 452, 115 *N. W.* 177, 182-183 (Iowa Sup. Ct. 1908); *Bryan v. Voss,* 143 *Ky.* 422, 136 *S. W.* 884, 887 (Ky. Ct. App. 1911); *La Guardia v. Smith,* 288 *N. Y.* 1, 41 *N. E.* 2d 153, 156 (Ct. App. 1942); *Eggers v. Kenny,* 15 *N. J.* 107, 104 *A.* 2d 10, 17 (N. J. Sup. Ct. 1954); *State ex rel. Simpson v. City of Mankato,* 117 *Minn.* 458, 136 *N. W.* 264, 267, 41 *L. R. A., N. S.,* 111 (Minn. Sup. Ct. 1912); 11 *Am. Jur.* Constitutional Law § 181 (1937); 16 *C. J. S.* Constitutional Law § 105 (1956); Annot., 67 *A. L. R.* 737, 740

(1930). Therefore, the doctrine of separation of governmental powers is not a constitutional limitation to be placed upon 50 *Del. Laws*, Ch. 428 (1955).

The next question presented is whether the Enabling Act Re-incorporating the Town of Elsmere empowered the Town to pass an ordinance pertaining to the operation of a motor vehicle while under the influence of intoxicating liquor, and whether State legislation on the same subject preempts the field, thereby invalidating such Town Ordinance.

Ordinance No. 74(1) (a) reads as follows:

"Operation of vehicle while under the influence of intoxicating liquor or narcotics.

"(a) Whoever operates a motor vehicle while under the influence of intoxicating liquor or of any drug shall be fined, for the first offense, not less than $200.00 nor more than $1,000.00, or imprisoned not less than 60 days nor more than 6 months, or both. For each subsequent like offense he shall be fined not less than $500.00 nor more than $2,000.00, and imprisoned not less than 60 days nor more than 18 months. A suspended sentence shall not be granted those convicted for a second offense under this section. In determining whether an offense is a second offense hereunder no offense prior to May 6th, 1960 shall be taken into consideration."
This Ordinance is identical with *Del. Code Ann.* tit. 21 § 4111 (a) (1957) in all respects except for the date used for determining second offenses.

Under the Enabling Act, the Council of the Town of Elsmere is given the power "to adopt traffic regulations". Also "the Council shall have all other powers requisite to and appropriate for the government of the Town of Elsmere, its peace and order, its sanitation and beauty, and for the health, safety, convenience, comfort and well-being of its population and for the protection and preservation of public and private property." 50 *Del. Laws*, Ch. 428 § 11 (1955). This appears

to empower the Council to adopt an ordinance relating to driving under the influence.

■ *Del. Code Ann.* tit. 21, § 4103 (1953) is an introductory statute in Chapter 41 entitled "Driving Regulations", of which Chapter Section 4111(a) is also a part. Section 4103 states as follows:

"Local authorities, except as expressly authorized by law, shall not alter any speed limitations declared in this chapter or enact or enforce any rule or regulation contrary to the provisions of this chapter, except that local authorities may provide by ordinance for the regulation of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one-way traffic upon certain highways and may regulate the use of the highways by processions or assemblages." (Emphasis added.)

Though the Town of Elsmere was not "expressly authorized by law" to enact an ordinance relative to driving under the influence, it was authorized "to adopt traffic regulations" and Ordinance No. 74(a) (1) is not a "rule or regulation contrary to the provisions of" Chapter 41—it is identical to § 4111(a). Therefore, I feel that the Town of Elsmere possessed the power to enact Ordinance No. 74(a) (1). The power to enact this ordinance is necessarily or fairly implied from powers expressly granted by the General Assembly, and such being the case, its enactment does not violate the general principle that a municipal corporation possesses only such powers as are granted by the legislature, and possesses no inherent police power. *Wright v. Husbands, Del.*, 131 *A.* 2d 322, 329, (Del. Sup. Ct. 1957); *Boyer v. Delaware Liquor Commission*, 6 *W. W. Harr.* 224, 173 *A.* 522, 527 (Del. Ct. Gen. Sess. 1934); *Cutrona v. Mayor and Council of Wilmington*, 14 *Del. Ch.* 208, 124 *A.* 658, 660 (Del. Ct. Ch. 1924).

Does the fact that the State has enacted legislation covering driving under the influence invalidate a town ordinance covering the same subject?

It is conceded that certain acts may be made penal offenses both under state statutes and municipal ordinances. The weight of authority holds that a municipal ordinance prohibiting and punishing the same act which constitutes an offense under state laws is valid so long as the ordinance does not conflict with the state statute, and the state statute does not show on its face that it was intended to be exclusive. 3 *McQuillen, Municipal Corporations* § 924 (2d ed. 1943); 37 *Am. Jur. Municipal Corporations* § 166 (1941); 62 *C. J. S.* Municipal Corporations §145 (1949). Of course, a municipal ordinance in conflict with a state statute is invalid. *Prouse v. Burley,* 10 *Terry* 537, 121 *A.* 2d 291, 292 (Del. Sup. Ct. 1956); *Boyer v. Delaware Liquor Commission,* 6 *W. W. Harr.* 224, 173 *A.* 522 (Del. Ct. Gen. Sess. 1934). Herein I am not concerned with any question of conflict since the ordinance and the statute are identical. Also, the plain wording of § 4111(a) shows no indication that the General Assembly intended it to be exclusive.

Cases from other jurisdictions are divided on the specific question involved herein, *i.e.,* whether a municipal ordinance making it unlawful for a person to drive a motor vehicle while under the influence of intoxicating liquor is valid when a state statute covers the same subject. The following cases have upheld such municipal ordinances: *State v. Poynter,* 70 *Idaho* 438, 220 *P.* 2d 386 (Idaho Sup. Ct. 1950); *State v. Weeks,* 216 *Minn.* 279, 12 *N. W.* 2d 493 (Minn. Sup. Ct. 1943); *State v. Hughes,* 182 *Minn.* 144, 233 *N. W.* 874 (Minn. Sup. Ct. 1930); *City of Bozeman v. Ramsey,* 362 *P.* 2d 206 (Mont. Sup. Ct. 1961); *Gembler v. City of Seward,* 136 *Neb.* 196, 285 *N. W.* 542 (Neb. Sup. Ct. 1939), aff'd *per curiam* 136 *Neb.* 916, 288 *N. W.* 545 (1939); *State ex rel. Coffin v. McCall,* 58 *N. M.* 534, 273 *P.* 2d 642 (N. M. Sup. Ct. 1954);

*Mares v. Kool,* 51 *N. M.* 36, 177 *P.* 2d 532 (N. M. Sup. Ct. 1946); *City of Toledo v. Best,* 172 *Ohio St.* 371, 176 *N. E.* 2d 520 (Ohio Sup. Ct. 1961); *Kistler v. City of Warren,* 58 *Ohio App.* 531, 16 *N. E.* 2d 948 (Ohio Ct. App. 1938); *City of Toledo v. Ransom,* 169 *N. E.* 2d 657 (Ohio Munic. Ct. 1960); *Shaw v. City of Norfolk,* 167 *Va.* 346, 189 *S. E.* 335 (Va. Sup. Ct. App. 1937); *City of Bellingham v. Schampera,* 356 *P.* 2d 292 (Wash. Sup. Ct. 1960); *Dane County v. Bloomfield,* 267 *Wis.* 193, 64 *N. W.* 2d 829 (Wis. Sup. Ct. 1954).

On the other hand, the following cases have declared such municipal ordinances invalid: *Clayton v. State,* 38 *Ariz.* 135, 297 *P.* 1037 (Ariz. Sup. Ct. 1931), aff'd on reh. 38 *Ariz.* 466, 300 *P.* 1010; *Price v. State,* 39 *Ariz.* 59, 3 *P.* 2d 1114 (Ariz. Sup. Ct. 1931); *Helmer v. Superior Court,* 48 *Cal. App.* 140, 191 *P.* 1001 (Cal. Dist. Ct. App. 1920); *City of Cannon v. Merris,* 137 *Colo.* 169, 323 *P.* 2d 614 (Colo. Sup. Ct. 1958); *State v. Mandehr,* 168 *Minn.* 139, 209 *N. W.* 750 (Minn. Sup. Ct. 1926); *City of Billings v. Herold,* 130 *Mont.* 138, 296 *P.* 2d 263 (Mont. Sup. Ct. 1956); *City of Fargo v. Glaser,* 62 *N. D.* 673, 244 *N. W.* 905 (N. D. Sup. Ct. 1932); *State ex rel. Burkett v. Robinson,* 96 *W. Va.* 556, 123 *S. E.* 575 (W. Va. Sup. Ct. App. 1924); *State ex rel. Keefe v. Schmiege,* 251 *Wis.* 79, 28 *N. W.* 2d 345, 174 *A. L. R.* 1338 (Wis. Sup. Ct. 1947); *Delaney v. Supreme Inv. Co.,* 251 *Wis* 374, 29 *N. W.* 2d 754 (Wis. Sup. Ct. 1947); Annot., 21 *A. L. R.* 1186, 1212 (1922); supp. by Annot., 64 *A. L. R.* 993, 1005 (1929); supp. by Annot. 147 *A. L. R.* 522, 566 (1943). In this latter group of cases, the municipal ordinance was declared invalid for one or more of the following reasons: the municipal corporation lacked the power to legislate in the field; the ordinance was in conflict with a state statute; or the subject of driving a motor vehicle while under the influence of intoxicating liquor was considered a matter of state concern and not local concern.

■ I am persuaded that the former group of cases are better reasoned, more convincing and more worthy of adoption by our jurisdiction. Ordinance No. 74(1) (a) was adopted by the Town of Elsmere pursuant to authority granted by the General Assembly for the town "to adopt traffic regulations"; the Ordinance does not conflict with *Del. Code Ann.* tit. 21 § 4111(a); and § 4111(a) does not show the General Assembly's intent to have the state statute preempt the field.

Driving a motor vehicle while under the influence of intoxicating liquor is of both state and local concern—it is of great concern to anyone using our public highways, roads or streets. Whether it is desirable to have both State and municipal legislation on the offense is a question which I have no prerogative to decide. This question of desirability must be answered by the Legislature. If the General Assembly intends State legislation in this field to be exclusive, then it must enact laws to make it exclusive.

■ What I have said with regard to the Ordinance making it an offense to operate a motor vehicle while under the influence of intoxicating liquor applies with equal force to the Ordinance regulating the speed of vehicles in the Town. The Enabling Act granted the Council the power "to adopt traffic regulations". However, Petitioners assert that the Council has failed to comply with the requirements of *Del. Code Ann.* tit. 21 § 4104 (1953). This statute empowers local authorities to alter speed limits, by ordinance, on State highways which pass through the municipality upon the fulfillment of certain requirements. In support of their assertion that these requirements were not fulfilled, Petitioners merely rely on a deposition of Mayor Walling, the incumbent in office. This deposition is clearly insufficient to apprise me of the facts so that I may rule on this contention. Anyway, I do not feel that this contention is properly before me on this Writ of Prohibition as will appear later.

 Petitioner Poynter contends his arrest was unlawful and unauthorized. Petitioner seems to forget that this is a petition for a Writ of Prohibition, an extraordinary remedy which issues generally when no other adequate remedy is available. *Knight v. Haley*, 6 *W. W. Harr*. 366, 176 *A*. 461, 464-465 (Del. Super. Ct. 1934). First, the Mayor of the Town of Elsmere has not decided this question, and at such trial before the Mayor, Petitioner will have adequate opportunity to raise the question of illegal arrest. Second, Petitioner has the right of appeal from the Mayor's ruling to this Court. *Del. Code Ann*. tit. 11 § 4503 (1953). These remedies are clearly adequate, and therefore I decline to rule upon this contention asserted by Petitioner. *Canaday v. Superior Court*, 10 *Terry* 332, 116 *A*. 2d 678, 682 (Del. Sup. Ct. 1955); *Knight v. Haley*, 6 *W. W. Harr*. 366, 176 *A*. 461 (Del. Super. Ct. 1934); 42 *Am. Jur*. Prohibition § 10 (1942); 73 *C. J. S*. Prohibition § 16(a) (1951).

 Next, Petitioners assert that the Mayor has no power to act as a judge since he was not appointed by the Governor by and with the consent of the Senate. This question has been adequately covered by two recent decisions, *i.e.*, *Smyth v. Shockley*, 176 *A*. 2d 378 (Del. Super. Ct. 1961); *In re Carter's Petition*, 157 *A*. 2d 588 (Del. Super. Ct. 1960). The Mayor is not a Justice of the Peace. He is not a constitutional officer within the provisions of *Del. Const*. Art. 4 § 30. In the case at bar, he acted upon acts in violation of the Ordinances of the Town of Elsmere—not violations of the Laws of the State of Delaware. The Mayor derives his authority from the Enabling Act creating the Town of Elsmere. Therefore, Del. Const. Art. 4 § 30, *Del. C. Ann.*, requiring appointment by the Governor by and with the consent of the Senate is not applicable to him.

It should be expressly noted that what I have said previously with regard to Ordinance 74(1) (a) has no application

concerning part (b) of said Ordinance. Ordinance 74(1) (b) reads as follows:

"(b) * * * Upon conviction of anyone under subsection (a) of this section, the Mayor of the Town of Elsmere shall certify the facts and record in the case to the Commissioner of Motor Vehicles, who shall forthwith revoke the operator's license of the party so convicted for a period of one year, or in the case the offense is committed by a person operating a motorcycle the operator's license shall be cancelled and none re-issued for a period of one year after such cancellation. After an operator's license has been so revoked, the Motor Vehicle Commissioner shall have power and authority not to issue another operator's license to such person so convicted until such person satisfies the Motor Vehicle Commissioner that he has been of good behaviour from the time his operator's license was so revoked until he makes application for the issuance of another operator's license and until such person has complied with the provisions of subchapters II and III of Chapter 29 of 21 Delaware Code. If in such case the Motor Vehicle Commissioner refused to issue an operator's license to such convicted person after a period of one year from the time his license was so revoked, the applicant may appeal to the Superior Court of the county wherein he resides."

Though the validity of this part of the Ordinance has not been expressly raised by the parties herein, I believe that it is properly before me for decision, and I will proceed to pass upon it.

Ordinance 74(1) (b) presents this anomalous situation—the judge of a municipal corporation can find a person guilty of violating a municipal ordinance, and certify such decision to a State official who shall in turn revoke the person's State driver's license. This part of the ordinance is invalid on at least three grounds. First, the Mayor of the Town of Elsmere is not a Justice of the Peace, and by the Enabling

Act he was not given the power to revoke driver's licenses nor to certify the record of his decisions to a State official who shall be required to revoke such license. See 50 *Del. Laws,* Ch. 428 § 20 (1955). Second, *Del. Code Ann.* tit. 21 § 2731 (1953) requiring courts and police officers to forward records of persons convicted of offenses "committed under any law of this State, regulating the operation of motor vehicles" does not apply since we are dealing with a municipal ordinance herein and not a "law of this State". Third, the licensing of Delaware drivers is a State matter and State legislation in the field is exclusive. *City of Bellingham v. Schampera,* 356 *P.* 2d 292 (Wash. Sup. Ct. 1960).

Therefore, I hold that Ordinance 74(1)(b) is invalid insofar as it relates to the certification of the Mayor's record to the Commissioner of Motor Vehicles who shall revoke the operator's license. This holding in no way invalidates or effects Ordinance 74(1)(a) since the part held invalid is clearly severable from the valid part.

This, I believe adequately disposes of all of Petitioners' contentions. Therefore, the petition for Writ of Prohibition must be denied.

On presentation, Order will be entered accordingly.