Samuel **STEINBERG, d/b/a Jack's Bookstore, Selma Steinberg and Nelda Mae Mauthe d/b/a International Peep Shows, Plaintiffs,**

v.

Daniel S. **FRAWLEY, Mayor, City of Wilmington, and Michael DiEleuterio, Commissioner of Licenses and Inspections for the City of Wilmington, Defendants.**

**Civ. A. Nos. 85–192, 85–374.**

United States District Court,
D. Delaware.

April 22, 1986.

Stephen B. Potter, James R. Leonard, and Susan L. Parker, of Potter, Carmine & Hodas, Wilmington, Del., for plaintiffs in Civ. A. No. 85–192.

E. Martin Knepper, Wilmington, Del., for plaintiffs in Civ. A. No. 85–374; Burton W. Sandler, Towson, Md., of counsel.

Karen L. Johnson, City of Wilmington Law Dept., Wilmington, Del., for defendants in Civ. A. Nos. 85–192, 85–374.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiffs in these consolidated lawsuits challenge the constitutionality of a City of Wilmington ordinance restricting the location of "adult entertainment establishments" within the city limits. The Court must decide here how a Delaware statute regulating the location of such establishments might affect the ability of the City of Wilmington to enforce its ordinance.

*I. Background*

In December 1980, the Wilmington City Council and Mayor approved Substitute No. 1 to Ordinance 80–104, entitled "An Ordinance To Restrict The Operation Of Adult Entertainment Establishments To M–2 Zones" (hereinafter "the Ordinance"). After defining the term "adult entertainment establishments", the Ordinance sets forth the following distance requirements for the location of such establishments:

a. no such adult entertainment establishment shall be allowed within 500 feet of another existing adult entertainment establishment.

b. no such adult entertainment establishment shall be located within 500 feet of a pre-existing school or place of worship;

c. no such adult entertainment establishment shall be located within 500 feet of any of the following zoning districts: R–1, R–2, R–2–A, R–3, R–4, R–5–A, R–5–B and R–5–C.

Substitute No. 1 to Ordinance 80–104, § 3 (1980) (codified at Wilmington, Del., Code § 48–33(c)(1) (1981)).

The Ordinance classified any adult entertainment establishment located in areas other than M–2 zones as a non-conforming use which had to cease operations within five years.

Any adult entertainment establishment which has non-conforming use status by virtue of its location in any of the following zones R–1, R–2, R–2–A, R–3, R–4, R–5–A, R–5–B, R–5–C, C–1, C–2, C–3, C–4, C–5, C–6 and M–1, shall be discontinued and must cease operation within five (5) years of the date when said establishment first obtained non-conforming use status. Any adult entertainment establishment which operates as a non-conforming use and which is subsequently sold, conveyed, or otherwise transferred to a new owner shall lose its non-conforming use status immediately.

*Id.*, § 6 (codified at Wilmington Del., Code § 48–51(c)(3)), (hereinafter "the amortization provision"). The Ordinance went into effect December 13, 1980.

Plaintiffs Samuel Steinberg and Selma Steinberg own Jack's Bookstore, located at 105 W. 8th Street, Wilmington, at which sexually-oriented materials are available. Plaintiff Nelda Mae Mauthe owns International Peep Shows, located at 516 S. Market Street, Wilmington, at which sexually-oriented materials are available and nude fe-

male dancers perform. Both businesses were in operation at the time the Ordinance was enacted. They then became legal nonconforming uses for the five-year amortization period because they are located in zones other than M–2 zones.

On June 24, 1982, the Delaware General Assembly enacted Senate Bill No. 401, amending the portion of the state code dealing with home rule for municipal corporations, *Del.Code Ann.* tit. 22, ch. 8. The statute added a new code section which set forth distance restrictions for the location of adult entertainment establishments in municipal corporations as follows:

§ 837. *Location of Adult Entertainment Establishments Restricted.*

(a) No adult entertainment establishment as defined by 24 *Del.C.* § 1602, located within the corporate limits of a municipal corporation shall be located:

(1) Within 500 feet from any residence, or

(2) Within 1,500 feet from any other adult entertainment establishment, or

(3) Within 2,800 feet from any church or school.

(b) Notwithstanding any provision of this Chapter to the contrary, no municipal corporation may adopt any ordinance or charter amendment with distance restrictions less than those provided in this section.

Act of June 24, 1982, 63 *Del.Laws*, ch. 283, § 1 (codified at *Del.Code Ann.* tit. 22, § 837 (Supp.1984)). The second section of the statute provided that the distance requirements would apply only to adult entertainment establishments "which have not received final approval for occupancy of a building required by any law, regulation or ordinance of any county, municipal corporation or other political subdivision prior to the effective date of this Act" (i.e., June 24, 1982). *Id.,* § 2.

Anticipating that the City of Wilmington might seek to enforce its ordinance against them by December 1985, the end of the amortization period, plaintiffs Samuel

Steinberg and Selma Steinberg filed suit March 28, 1985, against Daniel S. Frawley, the Mayor of Wilmington, and Michael DiEleuterio, Commissioner of the City's Department of Licenses and Inspection. Plaintiff Nelda Mae Mauthe filed suit June 24, 1985, against the same defendants. Both suits were brought under 42 U.S.C. § 1983 and seek declaratory and injunctive relief because of the alleged unconstitutionality of the Ordinance. The Court consolidated the two suits on September 27, 1985.

At a conference with the parties on October 31, 1985, the Court requested briefing on what preemptive effect, if any, *Del. Code Ann.* tit. 22, § 837, might have on the city ordinance.[1] Plaintiffs thereafter concluded that they were entitled to summary judgment because of the supposed preemptive effect of § 837 and filed a summary judgment motion simultaneously with their opening brief on the preemption question. In the meantime, the City agreed not to enforce its Ordinance pending resolution of the instant litigation. *See* Docket No. 60.

## II. The Parties' Contentions

The parties apparently agree on the respective roles played by the State of Delaware and municipal corporations, such as the City of Wilmington, in the area of zoning. Although the State, as sovereign, is the original repository of the zoning power, it has chosen to delegate much of that authority to the municipalities. For example, *Del.Code Ann.* tit. 22, § 301, explicitly grants to municipalities the power to promulgate zoning ordinances for "the purpose of promoting health, safety, morals or the general welfare of the community." The home rule statute, *Del.Code Ann.* tit. 22, § 802, permits any municipal corporation with a population of at least 1,000 persons to

amend its charter so as to have and assume all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant

---

1. Neither complaint mentions § 837 and its possible preemption of the ordinance. Defendants' attorney brought the statute to the attention of the Court in a letter dated October 22, 1985.

by specific enumeration and which are not denied by statute.

This provision gives municipal corporations broad police powers in such areas as zoning.

The City subsequently enacted a charter which gives it "complete powers of legislation and administration in relation to its municipal functions" to the extent they are not denied by state statute. Wilmington Home Rule Charter § 1–101; *NAACP v. Wilmington Medical Center*, 426 F.Supp. 919, 927 (D.Del.1977). Pursuant to the authority granted to it under home rule and earlier grants of authority such as *Del. Code Ann.* tit. 22, § 301, the City enacted the current comprehensive zoning code found in Chapter 48 of the city code. The Ordinance challenged here is part of this zoning code.

The accession of a municipal corporation to home rule status obviously does not remove it from the control of the state. A home rule municipality cannot exercise sovereign powers which are denied it by either the State Constitution or state statute. *Gage v. City of Wilmington*, 293 A.2d 555, 557 (Del.1972); *NAACP*, 426 F.Supp. at 927. In addition, the home rule chapter of the Code contains a subchapter (Subchapter VI) dealing with "Limitations and Exceptions" to a municipality's home rule powers. This subchapter contains § 837, the statute at issue here.

Both § 837 and the Ordinance address the same topic—the location of adult entertainment establishments—but do not do so in exactly the same manner. Working from the framework outlined above, the parties here arrive at very different positions on how the Court should deal with the existence of differences between the statute and the Ordinance.

Finding that the field addressed by the statute and the Ordinance (regulation of adult entertainment establishments) is identical, plaintiffs invite the Court to conduct a five-step inquiry to determine whether the statute has preempted the Ordinance:

1. Is there a "conflict" between the ordinance and the statute?

2. Was the statute intended to be exclusive?

3. Does the subject matter of the ordinance and the statute reflect a need for uniformity?

4. Is the statutory scheme so pervasive that it precludes the co-existence of the ordinance?

5. Does the ordinance stand as an obstacle to the objective and purpose of the statute?[2]

As to the first step, plaintiffs find both an explicit and an implicit conflict between the statute and the Ordinance. The Ordinance contains distance restrictions less than those found in the statute. It requires only that an adult entertainment establishment be at least 500 feet from a church, school, or another adult entertainment establishment, but the statute requires such establishments be located at least 2,800 feet from churches and schools and at least 1,500 feet from other adult entertainment establishments. The Ordinance also requires such establishments to be at least 500 feet from a residential district, while the statute requires them to be 500 feet from any residence, a more restrictive standard.[3] On an implicit level, plaintiffs argue that the statute and the Ordinance reflect two different theories about how adult entertainment establishments should be located relative to one another in a community. In particular, the statute seeks to disperse such establishments, and the Ordinance seeks eventually to concen-

---

**2.** These questions are drawn from a New Jersey decision, *Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of West New York*, 71 N.J. 451, 366 A.2d 321, 326 (1976).

**3.** There are other, more minor, variations in the two sets of distance restrictions. The statute uses the term "church" and the Ordinance uses "place of worship". The Ordinance's restrictions apply only to the proximity of an adult entertainment establishment to another "existing" adult establishment or a "pre-existing" school or place of worship. The statute does not make such distinctions.

trate such uses in particular areas of the city, the M–2 zones.

Regarding the second step, plaintiffs draw on the language of the statute and its context to support their contention that the legislature intended the statute to be exclusive. They point first to § 837(b), which states that "... no municipal corporation may adopt any ordinance" containing distance restrictions less than those found in the statute, and interpret this language to mean that any municipal enactment containing lesser restrictions is totally void. The title of § 837, "Location of Adult Entertainment Establishments Restricted", also shows the legislature's intent to reserve for itself exclusive power to impose locational restrictions on such establishments, according to plaintiffs.

The legislative history and subject matter of the statute show that uniformity of treatment of such establishments is necessary, under plaintiffs' view. Senator McBride, the sponsor of the bill which became § 837, stated that the bill would mimic a New Castle County ordinance and ensure that "one location [for operating such establishments] would not become more attractive than another...." Certified Transcript of Senate Debate on Senate Bill No. 401, at 6 (March 30, 1982).[4] Plaintiffs interpret this statement as evidence of legislative desire for statewide uniformity in the regulation of locations of adult entertainment establishments. As further evidence of the necessity for uniformity in regulating adult entertainment establishments, plaintiffs point out that the State has established a Commission on Adult Entertainment Establishments, which oversees licensing of such establishments on a statewide basis, and that regulation of the location of adult entertainment establishments is not a matter which "classically" has been of municipal concern.

Plaintiffs make only conclusory arguments in relation to the last two steps in their inquiry. They state simply that the statute presents a comprehensive approach to the subject matter. They then conclude, for all the reasons discussed previously, that the Ordinance is an obstacle to achievement of the legitimate purpose of the statute and thus is preempted by the statute.

As an alternative, plaintiffs argue that the Ordinance and statute must be construed together. Plaintiffs' construction of the two laws would read the state's more restrictive distance requirements into the Ordinance and give overriding effect to what plaintiffs call the "grandfather clause" in the statute: the provision making § 837 inapplicable to establishments with final approval for occupancy as of June 24, 1982. This clause, reflecting the legislature's intent to allow existing adult entertainment establishments to remain in operation, should be given precedence over the city ordinance which would phase out existing operations located in areas outside M–2 zones.

In rebuttal, the City argues that the plain language of the statute makes clear that the State wanted merely to establish minimum distance requirements for adult entertainment establishments, so that the Court need not refer to the legislative history of § 837. Nevertheless, the legislative history also shows that the State did not intend to prevent municipalities from adopting more stringent ordinances and did not wish to dictate identical locational standards statewide.

The City takes the position that the statute preempts the Ordinance only where an "actual conflict" exists: where the City permits what the State expressly prohibits. Only the Ordinance's distance requirements are in actual conflict with the statute and are preempted. The remainder of the Ordinance, such as the amortization

---

4. The Court has received numerous versions of the legislative debate on Senate Bill No. 401, some of which gave only a partial transcript and some of which had not been certified by the Secretary of the Delaware State Senate. The Court will rely on the certified transcript submitted by affidavit by defendants' attorney, *see* Docket No. 64, because it is the most complete. Citations to this transcript will be designated as "Tr. at ——".

provision and the restriction to M–2 zones, should remain in force.[5]

### III. Discussion

Resolution of the issues here is not as convoluted as the arguments of the parties suggest. The Court will follow a two-step process to determine whether § 837 preempts the Ordinance. First, it will examine the plain language of the statute for evidence that the State legislature meant to occupy totally the field of regulation of location of adult entertainment establishments. *See, e.g., A & P Stores v. Hannigan,* 367 A.2d 641, 642 (Del.1976). If the language of the statute provides no clear answer, the Court then will seek guidance about the legislature's intent from the history of § 837. *Id.* at 643; *Carper v. New Castle County Bd. of Educ.,* 432 A.2d 1202, 1205 (Del.1981).

■ The language of § 837 does not give a clear signal that the State legislature intended to assume all power to regulate the location of adult entertainment establishments. The only matter which the statute clearly prohibits municipalities from doing is adopting distance restrictions less than those found in the statute. The legislature could have stated explicitly that municipalities were prohibited from regulating the location of adult entertainment establishments. *Cf. Poynter v. Walling,* 54 Del. 409, 177 A.2d 641, 646 (1962) (construing statute which expressly prohibited local authorities from enacting regulations contrary to statute).

On the other hand, the language of § 837 gives no indication that the legislature wanted to give municipalities a free hand in regulating the location of adult entertainment establishments, so long as the prescribed distance requirements were met. The legislature also could have stated explicitly that § 837 was not intended to proscribe municipalities from adopting more stringent regulations. *Cf. Petition of Franklin Builders, Inc.,* 207 A.2d 12, 16 n. 2 (Del.Super.Ct.1964) (construing statute which prohibited State from interfering with more stringent local regulations). In the absence of an obvious directive from the plain language of the statute, the Court therefore must consult the legislative history of § 837 to attempt to discern the legislative intent.

Before turning to the legislative history, however, the Court will address plaintiffs' contention that the legislature wanted to impose uniform statewide standards for the location of adult entertainment establishments.[6] Section 837 states plainly that its distance requirements apply only to municipal corporations, and not to unincorporated portions of the counties.[7] Under the statute, operators of adult entertainment establishments evidently can locate their businesses outside the boundaries of a municipal corporation without regard for the proximity of schools, churches and other

---

**5.** Defendants also argue, as a threshold matter, that plaintiffs are not entitled to summary judgment, because the grounds on which they seek summary judgment were not raised as a claim in their pleadings. Through its request for briefing on the preemption question, the Court has taken judicial notice of the existence of the statute. Matter subject to judicial notice may be used in support of a motion for summary judgment. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.11[9] (2d ed. 1985).

**6.** Plaintiffs also make two "plain language" arguments that are simply beside the point. The Court cannot take seriously plaintiffs' claim that use of the word "location" in the title of § 837 ("Location of adult entertainment establishments") demonstrates that the State legislature clearly intended to preclude municipalities from enacting any locational restrictions. Similarly,

the Court cannot believe that the presence of § 837 in the "Limitations and Exceptions" subchapter of the home rule statute convincingly shows that the legislature wanted to remove from municipalities all regulatory power over the location of adult entertainment establishments.

**7.** The chapter on home rule defines "municipal corporation" to include

all cities, towns and villages created before or after December 28, 1961, under any general or special law of this State for general governmental purposes which possess legislative, administrative and police powers for the general exercise of municipal functions and which carry on such functions through a set of elected and other officials.

*Del.Code Ann.* tit. 22, § 801 (1981).

adult establishments. The only way § 837 could impose a statewide locational standards is if Delaware's three counties adopted the same distance requirements. They have not.[8]

The legislative history of § 837 strongly suggests that the General Assembly did not intend to preempt totally all municipal regulation of the location of adult entertainment establishments. To the contrary, the legislative history shows that the General Assembly wanted to establish a set of minimum standards for the location of adult entertainment establishments, to which municipal corporations could add more restrictive conditions according to local needs.

Senate Bill 401 as originally introduced contained the language: "[N]o municipal corporation may adopt any ordinance or charter amendment which *varies from* the location restrictions provided in this section." Appendix to Defendants' Answering Brief, at A–24 (emphasis added) (hereinafter cited as "Defendants' Appendix"). Senate Amendment No. 2 to the bill modified this language to read: "[N]o municipal corporation may adopt any ordinance or charter amendment with distance restrictions *less than* those provided in this section." *Id.* at A–30 (emphasis added). Senator McBride, the sponsor of the bill, provided this explanation for the amendment:

> What the amendment would do is allow them [municipal corporations] to pass ordinances over and above what this legislation calls for, so that if they decided they'd like to have something more strin-

gent in a municipality then they could do that, the legislation as drafted wouldn't allow them to, and consequently I'd like to have this amendment placed with the Bill, so I ask for a roll call.

Tr. at 5. The synopsis of the amendment also explained that it was intended to provide "flexability [sic] in distance restrictions." Defendants' Appendix at A–30.

Senator McBride subsequently explained that the bill, as a whole, was designed to impose minimum standards for the location of adult entertainment establishments within municipal corporations. At the time the Senate considered this bill, New Castle County had an ordinance which imposed similar distance restrictions on adult establishments. *See* New Castle County, Del., Ordinance 23–33(13).[9] This Ordinance covered only unincorporated portions of the County, and Senator McBride expressed concern that the County Ordinance might induce adult establishments to locate in municipal corporations which had no distance restrictions. Tr. at 6. To eliminate this possibility, Senator McBride introduced Senate Bill No. 401 to "mimic and mirror" the County Ordinance and to cover all municipalities, so that "one location would not become more attractive than another ..." *Id.*

McBride explained that the bill would allow municipalities to adopt restrictions more stringent than those found in § 837, if they desired. He stated that the Town of Elsmere already had a stricter ordinance and would not be concerned about the bill.[10]

---

**8.** For example, Kent County has adopted distance restrictions similar to those found in § 837 as to the proximity of an adult entertainment establishment to another such establishment or a residential district, but placed no limitation on the proximity of an adult entertainment establishment to a church or school. Kent County, Del., Code § 7.8 (1986) (setting out specific standards to evaluate conditional uses). Sussex County apparently does not regulate the location of adult entertainment establishments. Telephone Interview with Lawrence Lank, Director of Planning and Zoning, Sussex County (Apr. 16, 1986).

**9.** The Court is quite familiar with the New Castle County Ordinance. *See Amico v. New Castle*

County, 553 F.Supp. 738 (D.Del.1982), 571 F.Supp. 160 (D.Del.1983), 101 F.R.D. 472 (D.Del. 1984), *aff'd.,* 770 F.2d 1066 (3d Cir.1985). In *Amico,* the Court invalidated a portion of the County Ordinance which prohibited adult entertainment establishments from locating "within 500 feet of any property used solely for residential purposes," *see* 571 F.Supp. at 170, 171–72. That provision is similar to the provision in § 837 that no adult entertainment establishment shall be located "within 500 feet from any residence."

**10.** In reality, the relevant Elsmere Ordinance does not appear to be more strict that § 837. The Ordinance states:

However, "for those towns that have not passed any ordinances dealing with this topic, this would be quite helpful to them until they can pass an ordinance which would be more stringent." *Id.*

The statement of legislative intent contained in Senate Bill No. 401 supports the Court's conclusion that the bill was designed simply to prescribe minimum standards for the location of adult entertainment establishments. The statement reads: "WHEREAS, restrictions placed on the location of such [adult entertainment] establishments by other governmental entities are not binding on incorporated municipalities." Defendants' Appendix at A–21. The Court interprets this clause as a reiteration of Senator McBride's concern that municipalities might become more attractive locations for adult entertainment establishments because of the New Castle County Ordinance.

This legislative history clearly refutes plaintiffs' arguments that the General Assembly intended § 837 to be the exclusive and comprehensive regulation governing the location of adult entertainment establishments. The legislature recognized the ability of municipalities to adopt more strict regulations, and McBride expressly invited them to do so. Section 837 therefore could not be an exclusive and comprehensive pronouncement on the topic. Similarly, § 837 does not embody uniformity of the type plaintiffs suggest. The "uniformity" which the statute imposes is a threshold set of distance restrictions, to which municipalities could add according to local needs. The statute did not impose a statewide standard controlling totally where adult entertainment establishments could locate.

Plaintiffs sometimes take a different position on the "uniformity" question. They recognize that the legislature intended only to impose uniform minimum distance restrictions, but argue that the legislature

did not allow municipalities to impose any other sort of locational restrictions on adult entertainment establishments, such as the amortization provision and the provision requiring such establishments to locate in particular zones. During the debate on § 837, Sen. Hughes raised a similar question with respect to the effect of the legislation. That senator expressed concern that § 837 might preclude municipalities from experimenting with other theories of zoning adult entertainment establishments, such as concentrating them in one area, as the City of Baltimore had done. Tr. at 3. He questioned if the legislature were tying the hands of the municipalities with the statute. *Id.* Sen. McBride responded, not with a yes-or-no answer, but with the explanation of the purpose of the distance requirements set out above. Plaintiffs argue that this non-response shows that the legislature wanted no restrictions on the location of adult entertainment establishments except for distance requirements. Plaintiffs' Opening Brief at 12–13.

The Court cannot accept this interpretation of the statute and its history. An examination of the legislative record shows all too clearly that the General Assembly wanted simply to impose minimum distance requirements on the location of adult entertainment establishments and to leave the municipalities free to impose other locational restrictions on such establishments, so long as the State's distance requirements were respected. The Court concludes, therefore, that § 837 does not preempt the City Ordinance. *See generally* Note, *Conflicts Between State Statutes and Municipal Ordinances*, 72 Harv.L.Rev. 737, 748–49 (1959) (majority of courts take position that municipal ordinance can provide more strict regulation than state statute addressing same area unless statute states otherwise).

---

Massage Parlors which provide services on and/or off premises, adult book stores and adult entertainment centers shall not be permitted within 500 feet of any property used solely for residential purposes. No massage

parlors, adult book stores and/or adult entertainment centers shall be permitted within 1,500 feet of each other.
Elsmere, Del., Ordinance 130 (Sept. 8, 1977).

The next stage of inquiry concerns how the statute and Ordinance can be construed together, given the actual conflict which exists between them as to the specific distance requirements. The parties have suggested three possible ways to construe the two together: the Ordinance is totally void because it conflicts with part of the statute; the Ordinance is preempted only as to the specific distance requirements which conflict with the statute; or the Ordinance is preempted only as to the specific distance requirements but does not affect plaintiffs' businesses because they were in operation as of June 24, 1982.

■ Based on language in § 837, plaintiffs argue that the Ordinance is void totally because it contains offending distance requirements. Part (b) of the statute states that "no municipal corporation *may adopt* any ordinance or charter amendment" with lesser distance restrictions (emphasis added). Under plaintiffs' view, the very presence of distance restrictions in violation of § 837 renders the entire Ordinance void.

The Court will not adopt such an extreme reading of § 837 and effectively throw out the baby with the bathwater. Two general rules of statutory construction govern the Court's consideration of this question. First, it is undeniable that a municipal ordinance must yield where an actual conflict exists between it and a state statute. *E.g., Poynter v. Walling,* 54 Del. 409, 177 A.2d 641, 646 (1962); 6 McQuillin, Municipal Corporations § 21.32 (3d ed. 1981). At the same time, however, a statute and an ordinance regulating the same subject must be reconciled to give as much effect as possible to each. *St. Stanislaus Kostka Church v. Mayor of Wilmington,* 48 Del. 411, 105 A.2d 596, 598, *affd.,* 49 Del. 5, 108 A.2d 581 (1954); 6 McQuillin, *supra,* § 21.35. These two rules lead the Court to conclude that only those portions of the Ordinance which actually conflict with § 837 (i.e., the distance restrictions found in § 3 of the Ordinance) are void. *See* 6 McQuillin, *supra,* § 21.35 at 254 (statute may have effect of superceding portion of

ordinance and leaving remainder in effect); *Boven v. City of St. Petersburg,* 73 So.2d 232 (Fla.1954) (conflict between one provision of city ordinance on sale of alcoholic beverages and state statute on same subject did not invalidate other provisions of ordinance not in conflict with statute). The severability provision of the Wilmington City Code, § 19.7, which provides that the invalidity of a portion of the Code shall have no effect on the remainder of the Code, reinforces the Court's conclusion. *See generally* 2 C. Sands, Sutherland Statutory Construction, § 44.11 at 356 (4th ed. 1973) (general severability provisions should be treated as aids to interpretation rather than commands). In addition, striking down the entire Ordinance because of the presence of the offending distance restrictions would countermand the clear legislative intent outlined above to allow municipalities to adopt more stringent restrictions on the location of adult entertainment establishments.

■ Even if the Ordinance is invalid only as to the conflicting distance restrictions, plaintiffs claim exemption from it because of what they term the "grandfather clause" in § 837. That provision makes § 837 inapplicable to adult entertainment establishments which had final approval for occupancy as of June 24, 1982. 63 *Del.Laws,* ch. 283, § 2. Plaintiffs find support for their position that § 837 shields them from the Ordinance from a brief remark in the legislative history. In response to an inquiry on whether § 837 would affect an adult establishment (evidently plaintiff Mauthe's business) located near downtown Wilmington, Sen. McBride stated, "[T]his wouldn't affect any establishment … you can't affect anything presently in existence." Tr. at 2.

The Court cannot accept plaintiffs' argument. First, the plain language of § 2 of the legislation suggests that existing adult entertainment establishments were to be "grandfathered" *only* from the effects of § 837. Nothing in the statute implies that it was designed to nullify the application of prior municipal regulations to existing es-

tablishments. The Court is of the opinion that this so-called "grandfather clause" does nothing more than provide the effective date of the statute. The complete history of § 837 negates (or at least confuses) the meaning which plaintiffs ascribe to Sen. McBride's comment. Sen. McBride, at another point in the debate, explained that the purpose of § 837 was to "get at" adult entertainment establishments, such as one located in his senatorial district which abutted a private residence. Tr. at 3. Similarly, Sen. McBride's invitation to municipalities to enact more stringent regulations, *see* Tr. at 6 (discussed *supra* pp. 554–55), suggests that the legislature did not intend to deprive municipalities of the power to regulate existing adult entertainment establishments. The statute does not preclude the City from enforcing its Ordinance against plaintiffs.

In summary, the Court finds that *Del. Code Ann.* tit. 22, § 837 does not preempt the Ordinance totally, but only preempts § 3 (codified at Wilmington, Del., Code § 48–33(c)(1)), which establishes distance requirements less than those set out in § 837. The grandfather clause in the statute does not prohibit the City from enforcing the remainder of its Ordinance against plaintiffs. As a result, plaintiffs' motion for summary judgment is denied. An Order will enter in accordance with this Opinion.